UNITED STATES, Appellee.

v

PAUL M. TURNER, Seaman, U. S. Coast Guard, Appellant

9 USCMA 124, 25 CMR 386

---

*Commander William L. Morrison* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Commander George H. Weller.*

*Lieutenant Commander Albert S. Frevola* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Commander Harley E. Dilcher.*

## Opinion of the Court

HOMER FERGUSON, Judge:

It was to consider the extent of the law officer's activities, both before and during trial, which prompted us to grant review in this case. Two issues are presented. The first deals with a claim of disqualification of the law officer by reason of his having prepared the pretrial advice for the convening authority pursuant to Article 34, Uniform Code of Military Justice, 10 USC § 834. The second concerns his presence during the closed session of the court-martial while deliberating on the sentence. The facts which gave rise to the accused's conviction of absence without leave and larceny are not apposite to our determination of these specific issues and need not detain us.

On October 8, 1956, the investigating officer submitted his report recommending the accused's trial by general court-martial for the offenses of absence without leave, larceny, sodomy, committing lewd and lascivious acts upon a minor, and impersonating an officer. Four days later the pretrial advice, prepared by Lieutenant Commander W, "Law Specialist," was submitted to the convening authority for his consideration. As a result of recommendations contained therein, the charge of impersonating an officer was withdrawn, the offense of sodomy was reduced to attempted sodomy, and the offense of committing lewd and lascivious acts was

modified. These latter two offenses were subsequently withdrawn by the prosecution at trial. Trial by general court-martial was recommended. On October 29, 1956, the court-martial which tried the accused was convened with Lieutenant Commander W sitting as law officer. Trial counsel announced in open court that "a grounds for challenge" against the law officer existed by reason of the fact that he had acted as staff legal officer and had forwarded the charges to the convening authority with his recommendation as to disposition. The following colloquy then occurred:

"LO: As law officer I should reveal that there is a grounds for challenge, but it has already been stated by the trial counsel; namely, that I reviewed the pretrial investigation and forwarded the same with a recommendation for trial to the District Commander.

"TC: The prosecution has no challenges for cause. The prosecution has no peremptory challenge. Does the accused desire to challenge any member of the court or the law officer for cause?

"DC: No."

I

The Government takes the position that the law officer's prior participation

126

constituted a ground for challenging him for cause, which de fense counsel elected to waive after full and frank disclosure at trial. The accused, on the other hand, contends that the law officer was disqualified from acting in that capacity without regard to any question of waiver by counsel. As a proper background for consideration of the issue, a review of the applicable statutory law and prior case law in this area is appropriate. Article 26(a), Uniform Code of Military Justice, 10 USC § 826, provides that:

". . . No person is eligible to act as law officer in a case if he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case."

Here, the law officer was neither the accuser, a witness for the prosecution, nor an investigating officer within the meaning of the Article. It becomes apparent, therefore, that if disqualification is to be based on the Code, it can only be predicated upon the conclusion that his pretrial activities constituted him as "counsel" within the meaning of the Article. The Code is none too helpful here for it does not define the term "counsel." However, moving next to the Manual for Courts-Martial, United States, 1951, we find that paragraph 62f(11) provides, among the possible grounds for challenge, "That he [court member or law officer] has acted in the same case as the convening authority or as the legal officer or staff judge advocate to the convening authority." This ground for challenge is not self-executing. United States v Bound, 1 USCMA 224, 2 CMR 130. See also paragraph 62c, Manual for Courts-Martial, supra.

Pretrial activities similar to those involved in this case were considered by the Court in United States v Schuller, 5 USCMA 101, 17 CMR 101. There, the law officer of the court which tried the accused had previously, while serving as acting staff judge advocate, signed and submitted the pretrial advice to the convening authority pursuant to Article 34 of the Code, supra, 10 USC § 834. During the challenging procedure, the law officer's prior participation was not disclosed, the trial counsel and the law officer having stated at that time that they knew of no grounds for challenge. The defense counsel was unaware that the law officer had signed the pretrial advice as acting staff judge advocate. In refusing to apply the doctrine of waiver in such a setting, we said:

"The primary responsibility for disclosing grounds for challenge, which appear from the preliminary proceedings, rests upon the trial counsel. Manual, paragraph 62b, pages 89–90. Even if the law officer was unaware of his own disqualification, the trial counsel does not assert a like lack of awareness. On the other hand, the defense counsel unequivocally states that he did not know of the law officer's previous connection with the case. *We are unwilling to charge the accused with the consequences of a failure to exercise due care, when it appears that trial counsel had actual knowledge of the disqualification, but still failed to disclose it, as it was his duty to do.*" [Emphasis supplied.]

Recently, in United States v Roberts, 7 USCMA 322, 22 CMR 112, with facts similar to those in the *Schuller* case, supra, we again held the doctrine of waiver inapplicable where there was "nothing in the pretrial proceedings or elsewhere which would have put the defense on notice that Major Hudson was the advising officer." The *Schuller* and *Roberts* cases, supra, however, are clearly distinguishable from the one at bar. Here, both trial counsel and the law officer made full disclosure in open court that a ground for challenge existed. In addition to specifically bringing the matter to defense counsel's attention, he was afforded an opportunity to exercise a challenge for cause against that law officer. Armed with this knowledge, he elected instead to waive any ground for challenge. Under these circumstances, we believe the "intelligent and conscious waiver" required by us in United States v Beer, 6 USCMA 180, 19 CMR 306, has been met. Accord, United States v Hurt, 8 USCMA 224, 24 CMR 34; cf. United States v Wilson, 7 US CMA 656, 23 CMR 120. Accordingly,

we conclude that although ground for challenge against the law officer existed by reason of his having acted as staff legal officer in advising the convening authority pursuant to Article 34, supra, such ground was waived by the defense counsel's refusal to challenge after full disclosure was made in open court.

By no means are we to be understood as placing our stamp of approval on the practice of permitting one who has prepared the pretrial advice to later act as law officer in the same case. On the contrary, we believe that such a practice constitutes error. We took great pains to point out earlier in this opinion that were it not for the fact that there was full disclosure followed by conscious election, our holding would be different. Cf. *Schuller* and *Roberts*, supra. It seems to use that the better practice—consistent with the canons of judicial ethics—would be for a law officer who has assisted in the preparation of the pretrial advice to subsequently disqualify himself on his own motion. Although a failure to do so does not violate the letter of the Code, it fractures the spirit. In the frontier phase of this Court's development, we made it crystal clear that the trial of cases by courts-martial must remain scrupulously free of even the slightest suspicion of improper conduct. Apparently the situation involved in this case has occurred but rarely in the past. It is hoped that in the future, it will occur even less.

## II

Appellant's final claim of error, which is based on the law officer's participation in the closed session of the court while deliberating on the sentence, arose in the following manner. After the court announced its findings, trial counsel presented evidence of a previous conviction and defense counsel argued for "a comparatively light sentence." The law officer offered no instruction on the maximum imposable sentence. The court closed to deliberate at 3:05 p.m. After having been out an undisclosed period of time, the law officer and reporter were called into the closed session. The record of trial indicates that

128

the following conversation then took place:

"PRES: Some of the court members wanted to get your opinion or advice regards to rate reduction, I believe.

"CDR QUINBY (MEMBER): First, I assume in the event of discharge, a DD or a BCD, the discharge is not executed until the expiration of the term of confinement, is that right?

"LO: That is the general rule.

"CDR QUINBY (MEMBER): Now, in the event he is sentenced to imprisonment for a term, do we have to as part of the sentence include in there reduction in rank, or will that take place automatically?

"LO: It does not take place automatically. I'll refer the court to Section 0111 of the Coast Guard Supplement. Actually, this information should be given in open courtroom, but since it's a simple reference to the Supplement and it will resolve your doubts I feel there is no need to open court.

"CDR QUINBY (MEMBER): One other question. Is it proper to ask what his rate of pay will be in the lowest enlisted grade?

"LO: I refer you to the Army Pocket Part of the Manual on that. They have a pay scale on page 168.

"CDR QUINBY (MEMBER): The lowest pay scale is private E–1, would that be the lowest in the Coast Guard, is that right?

"LO: That is correct.

"LCDR BURKE (MEMBER): Don't forget to take into consideration that he has some twelve years service.

"CDR QUINBY: The maximum is four, after that he doesn't draw any more.

"LCDR BURKE (MEMBER): What is he getting now?

"CDR QUINBY (MEMBER): $98.80.

"CWO REDFORD (MEMBER): How much?

"CDR QUINBY (MEMBER): $98.80 for four years service, that's all he gets.

"LO: If that answers your question, I think I had better excuse myself and leave.

"PRES: All right."

The law officer and the reporter thereupon withdrew from the closed session, with the record again silent as to time. At 3:50 the court reopened and sentenced the accused to a bad-conduct discharge, forfeitures of $50.00 per month for nine months, reduction to the grade of seaman recruit, and confinement at hard labor for nine months. Before reaching the question of the law officer's participation during the closed session of the court, we deem it appropriate to first consider the effect of the law officer's failure to instruct on the sentence.

The guide for trial procedure set forth in Appendix 8a of the Manual, supra, provides that "the law officer may advise the court of the maximum punishment which may be imposed." Similar language may be found in paragraph 76b(1) of the Manual which discusses the procedure relating to advice on the maximum sentence.[1] Without regard to the validity these provisions may have enjoyed prior to our decision in United States v Rinehart, 8 USCMA 402, 24 CMR 212, they are invalid now. In *Rinehart,* we struck down what we considered the objectionable practice of permitting court members to use the Manual during trial or while deliberating on findings and sentence. We are not unmindful of the fact that the instant case was tried before the *Rinehart* case was decided and that the practice of not instructing the court-martial as to sentence had been followed in the past—although infrequently—by law officers in the other services.

However, in order that there be no misunderstanding as to the future, we now hold that the law officer of a general court-martial and the president of a special court-martial must advise the members in open court on the maximum permissible limits of punishment prior to deliberation on the sentence. Only in this manner can we satisfy ourselves that the sentence adjudged by a court has been based upon correct limitations. Cf. United States v Cooper, 2 USCMA 333, 8 CMR 133; United States v Posnick, 8 USCMA 201, 24 CMR 11.

We begin our treatment of the remaining issue here with the premise accepted by us in United States v Allbee, 5 USCMA 448, 18 CMR 72, to the effect that the tradition of nonparticipation of the law officer in the deliberation of the court-martial is sufficiently well-established in the service so that where occasional lapses occur, this Court will utilize the rebuttable presumption that prejudice did in fact result from such participation. Applying this premise to the facts of the instant case, we must conclude that the Government has failed to rebut the presumption that prejudicial error has occurred. Our conclusion is based upon several factors which may be traced directly to the law officer's participation in the court's deliberations.

We first wish to note that there is no showing that either the accused or his counsel was aware of the law officer's presence during the session. Furthermore, the record fails to disclose the length of time the law officer spent before the court. When the law officer enters the closed session of a court-martial, he must insure that the proceedings which transpire during his presence will accurately and faithfully be recorded and made a matter of record. Article 39 of the Code, supra, 10 USC § 839. The time of entry and departure from the closed session is an important part of the record. It is absolutely essential that the record of trial reflect as accurately as possible

---

[1] *"Advice as to maximum punishment.*—Before a general court-martial closes to deliberate and vote on the sentence, the law officer may advise it of the maximum punishment which may be adjudged for each of the offenses of which the accused has been found guilty. If a special court-martial has any question as to the maximum pun-ishment it may adjudge in a particular case, it may request the trial counsel to procure and present this information to the court. Such advice and information will be given in open court in the presence of the accused and counsel for both sides and shall be made a matter of record."

the true nature of the proceedings in order to avoid any suspicion or suggestion that discussions which may have in any manner prejudiced the accused had taken place "off the record." Paragraph 49*b*, Manual for Courts-Martial, supra. In addition, appellate authorities must be fully apprised of all events that have taken place so that they will be able "to decide properly the issues raised in the court-martial." United States v Nelson, 3 USCMA 482, 13 CMR 38.

The most serious aspect of the law officer's participation was his referral of the court-martial to outside legal sources, including the Coast Guard Supplement to the Manual for Courts-Martial, United States, 1951, and the United States Army Cumulative Pocket Part of the Manual for Courts-Martial, United States, 1951. This amounted to instructing the court-martial outside the presence of the accused and counsel. In *United States v Rinehart,* supra, we were faced with a situation where the attention of the court members was invited to passages contained in the Manual even though most of the passages referred to had little if any relevance to the court's determination of an appropriate sentence. We observed in that case that as a result of the use of the Manual in closed session "a virtual race to the Manual had begun in spite of the fact that the law officer had fully and adequately instructed the members on the applicable law pertaining to the sentence." Although we are not absolutely certain whether or not the court members in the instant case had access to the Manual—though we strongly suspect that they did—we are reasonably certain that they did have access to and utilized the legal sources previously referred to, otherwise the law officer's reference to specific sections of these publications would have been meaningless. Unlike *Rinehart,* where the court consulted outside sources, *in spite of* adequate instructions by the law officer pertaining to sentence, here, the court-martial was of necessity forced to examine outside sources *because of* the law officer's failure to give any instructions at all. In either case, however, it was the use

of outside legal sources which spoiled the proceedings. United States v Elliott, 8 USCMA 548, 25 CMR 52; United States v Chaput, 2 USCMA 127, 7 CMR 3; United States v Lowry, 4 USCMA 448, 16 CMR 22.

We hold, therefore, that prejudicial error occurs when the law officer appears in closed session and refers the court-martial to outside legal sources affecting the sentence without affording the accused and his counsel the opportunity to object or request clarification of such matters. Article 26(b) of the Code, supra, 10 USC § 826, and Article 39 of the Code, supra. The error, however, extends only to the sentence portion of the proceedings. Accordingly, we affirm the findings of guilt but set aside the sentence and order that the record be returned to the court-martial for a rehearing on the sentence.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in the first part of the Court's opinion which holds that trial defense counsel waived the defense privilege of challenging the law officer.

I dissent from the views of my associates which set aside the sentence for other irregularities. In ▮▮▮▮ cases involving unlawful communications with court members, I have watched the doctrine of reversal without prejudice ebb and flow but I had concluded it was laid to rest in United States v Allbee, 5 USCMA 448, 18 CMR 72. There, a unanimous court concluded that the measuring rod for unlawful communications between a law officer and the court-martial would be prejudice to an accused. It was to be determined in the following manner. When there was an error of that sort, prejudice might be apparent from the face of the record; but if not, it would be presumed unless the Government carried the burden of showing no harm. Here that load was carried, for by any reasonable test the record shows no prejudice. The information gleaned from the pay

tables was not incorrect or misleading and I suppose the court-martial could take judicial notice of the rates. The other advice offered by the law officer was in accordance with the law and not subject to dispute or explanation. Therefore, all that can be frowned upon is that the court members were authorized to consult the Coast Guard Supplement and the Army Cumulative Pocket Part of the Manual for unrebuttable information. Of course, if mere opportunity to refer to the Manual is sufficient to require reversal, then the probability of looking to its supplementing parts requires the same result. However, in United States v Rinehart, 8 USCMA 402, 24 CMR 212, which turned military procedure topsy-turvey, a thirty-day period of grace was authorized and that deadline had not been reached when this case was tried.

Without rearguing *Rinehart*, supra, I call attention to the fact that there is much latitude permitted courts-martial in imposing sentences and a law officer cannot possibly anticipate the many problems which will arise. He cannot prepare forms for sentence as is done in civilian practice, so the best solution I can propose for the future narrows to this type of proceedings. If difficulty is being encountered by the court-martial in reaching agreement on the type, nature or appropriateness of the sentence to be imposed, the procedure to be used in voting, or other matters properly before the court, the president of the court must have it reconvene in open session and ask for assistance from the law officer. This may in some degree interfere with the secrecy of the deliberations but it is the only method now available.

Obviously, I must concur with the holding that the law officer of a general court-martial or the president of a special court must, from the date *Rinehart* became effective, instruct the members on the maximum sentence imposable for there remains no other alternative. But I fail to see how adequate guideposts can be furnished the court for other variations which are permitted by military law. I suppose the task is surmountable but the possibility of prejudice to an accused going undetected under the former proceedings was so improbable that the guides found in the Manual and its counterparts should not have been denied the court-martial.