UNITED STATES, Appellant

v

JOSEPH M. YOCOM, Private, U. S. Army, Appellee

17 USCMA 270, 38 CMR 68

*Major Edwin P. Wasinger* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel David Rarick, Major John F. Webb, Jr.,* and *Captain L. Dean Moore.*

*Captain Henry C. Chappell, Jr.,* argued the cause for Appellee, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Kenneth J. Stuart.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened at Fort Polk, Louisiana, the accused was convicted, upon his pleas of guilty, of four specifications of absence without leave, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for eighteen months. Reducing the period of confinement to one year, the convening authority otherwise approved the sentence. The board of review reversed and ordered a rehearing on the sentence on the basis of certain alleged instructional omissions by the law officer. The Judge Advocate General of the Army has certified that decision here upon the question:

"WAS THE BOARD OF REVIEW CORRECT IN SETTING ASIDE THE SENTENCE AS INCORRECT IN LAW?"

There is no question concerning the propriety of accused's pleas of guilty or the findings returned by the court-martial. The issue presented arises from the fact that none of the periods of unauthorized absence involved, separately considered, is sufficient to permit inclusion in the maximum permissible punishment of a bad-conduct discharge. Nevertheless, when the four specifications are considered together, they permit an aggregate sentence to confinement in excess of six months, and the Manual for Courts-Martial,

United States, 1951, pertinently provides:

"**Permissible additional punishments.—** . . .

"If an accused is found guilty of two or more offenses for none of which dishonorable or bad conduct discharge is authorized, the fact that the authorized confinement without substitution for such offenses is six months or more will, in addition, authorize bad conduct discharge and forfeiture of all pay and allowances. But see 126*c*(1)." [Manual, supra, paragraph 127*c*, Section B.]

The same paragraph of the Manual, supra, also provides for a punitive discharge, not otherwise authorized, in the event evidence of two or more previous convictions is adduced. In United States v Hutton, 14 USCMA 366, 34 CMR 146, this Court concluded the law officer was required to inform the court-martial that a bad-conduct discharge was authorized as a permissible additional punishment only on the basis of previous convictions. Otherwise, we said, "the court was unlikely to appreciate that Hutton was being punished for offenses for which a punitive discharge was not authorized and fairly to balance the appropriateness of this severe penalty against his excellent prior record." *Hutton,* supra, at page 370.

The Government, however, here argues the *Hutton* decision is an aberrant; that it is based on the considera-

tion that punishment was there enhanced by a factor beyond the findings of guilty, *i.e.*, the evidence of previous convictions; and that where, as here, the increase in punishment is due to the multiple nature of the verdict itself, the law officer or president need only instruct on the maximum limitation of punishment and not expand on the basis therefor. Such is said to be the rationale of United States v Turner, 9 USCMA 124, 25 CMR 386. This approach misapprehends the meaning of both the *Turner* case and *Hutton*, supra, wherein we rejected as ill-founded the contention that the law officer or president had no duty to instruct beyond giving the maximum limitation on sentence. See also United States v Ferree, 16 USCMA 506, 37 CMR 126.

Prior to our decision in United States v Rinehart, 8 USCMA 402, 24 CMR 212, the practice of permitting members of a court-martial to have with them in open and closed session individual copies of the Manual for Courts-Martial, supra, was well-nigh universal. The members, laymen all, were free to rummage through its pages, find their own law, and, pertinent to our inquiry here, have before them full information on their sentencing powers, though without the guiding hand of the law officer to winnow out the applicable principles from the many points obviously irrelevant to the particular case they were deciding. In *Rinehart*, supra, the matter was raised here, and we brought a sharp end to this practice, giving to the law officer exclusively the function which Congress had entrusted to him, namely, that of instructing the court members on the law of the case. Code, supra, Article 51, 10 USC § 851. It was in light of this decision that we subsequently decided United States v Turner, supra.

In the *Turner* case, there was no instruction at all on the maximum penalty. In short, the court members were left totally unaware of what punishment they might visit on the accused. We decided only that, at the very least, this limitation must be the subject of instructions by the law officer. And, as we later said of *Turner*, supra, in

United States v Hutton, supra, at page 369:

"Beyond this holding, we did not go, satisfying ourselves with settling the issue then before us by laying down a minimal requirement as to sentence instructions. Since *Turner*, supra, was decided, we have pointed out that it is not necessarily sufficient to rely on a bare statement of the maximum sentence. Thus, in United States v Rake, 11 USCMA 159, 28 CMR 383, we declared, while areas of discretion existed, 'the law officer's responsibility to provide guidance to the court-martial is no less than his responsibility in regard to the findings' and noted 'it is appropriate for the law officer to provide "general guides governing the matters to be considered in determining the appropriateness of the particular sentence." ' "

*Hutton*, supra, is therefore, no odd branch on the evergrowing tree of the law. It merely places emphasis on the need to furnish the court members with enlightenment on the legal and other issues regarding the question of sentence and to tailor his instructions on punishment to relevant factors bearing thereon. Thus, in United States v Linder, 6 USCMA 669, 20 CMR 385, Chief Judge Quinn early stated, at page 674:

"In United States v Keith, 1 USCMA 442, 4 CMR 34, and in United States v Lowery, 2 USCMA 315, 8 CMR 115, we noted that the members of a court-martial are not presumed to know the law. Their source of knowledge of the law is the law officer. Although in the Keith and Lowery cases we were concerned with the members' lack of knowledge of the law in respect to the findings of the guilt or innocence of the accused, the presumption is equally applicable to their determination of the sentence. The law officer must provide the court members with appropriate instructions on the law which applies to all matters to be decided by them. He should not require or expect the court members to consult other sources for the law. See

272

United States v Lowry, 4 USCMA 448, 16 CMR 22. And his responsibility in that regard does not end with the findings. In United States v Strand, 6 USCMA 297, 306, 20 CMR 13, we said: 'Until the sentence proceedings are complete, the trial is not ended.' Until the trial ends the law officer must supply the court members with adequate legal assistance."

And in United States v Quesinberry, 12 USCMA 609, 31 CMR 195, Judge Kilday, concurring, referred to the need for "adequate guideposts in deliberating on an appropriate penalty." *Id.*, at page 612. In short, as we said in United States v Smith, 13 USCMA 471, 33 CMR 3, at page 474, "justice tends to flourish in an enlightened atmosphere. The requirements of the law foster it, and the intent of this Court has always been to encourage that situation."

Turning to the precise issue presented, we see no rational distinction between requiring instructions as to a punitive discharge based on the number of offenses of which accused stands convicted and one based on the number of previous convictions. In each instance, the discharge is a permissible additional punishment. Manual, supra, paragraph 127*c*, section B. In each instance, it is not premised upon the actual offenses which accused has committed, but upon, in the one case, his previous record, and, in the other, the equally extraneous factor that the charges against him happened to be tried together. The rationale of *Hutton*, supra, is that the court-martial should know the crimes of which accused has been convicted are not ordinarily so severely punished and, as in the case of previous convictions, it should be fully advised before determining to impose a punitive discharge, the effects of which are incalculable. Accordingly, we conclude the board of review was correct in determining the law officer erred in failing to instruct the court on the basis for inclusion in the maximum sentence of the permissible additional punishment of a bad-conduct discharge.

The Government, however, finally urges that the defense waived the lack of instructions, as he stated, "All right, sir," when the law officer noted he would, in the absence of objection, "just state the maximum sentence to the court without breaking it down or stating the reasons why a BCD is authorized."

Under the peculiar circumstances of this case, we, like the board of review, decline to give effect to any waiver. As we said in United States v Strong, 1 USCMA 627, 5 CMR 55, "defense counsel's action amounted to little, if any, more than a mere failure to object." Counsel introduced strong evidence of the accused's good character and repute. The offenses were minor in nature and, had the court-martial known adjudication of a bad-conduct discharge was posited only on the fact that the charges were tried together and permitted confinement in excess of six months, it may have hesitated in returning so severe a sentence. As the board itself said:

". . . The responsibility to instruct was on the law officer and the decision not to do so originated with him. He was either unaware of the Court's pronouncements in the area or else decided to ignore them. In either case, we are reluctant to penalize the appellant by holding in effect that his counsel waived the error, as argued by the government, by not being better informed or by agreeing to forego a right to which his client was entitled. . . ."

The certified question is answered in the affirmative. The decision of the board of review is affirmed.

Judge KILDAY concurs.

QUINN, Chief Judge (concurring in the result):

I dissented in United States v Hutton, 14 USCMA 366, 34 CMR 146, but I am sure I do not misconceive the import of that case by saying it does not hold that omission of an instruction on the effect of evidence of previous convictions is an automatic ground for reversal. As I read the Court's opinion in *Hutton*, it determined only that the instructional omission is error, but it

is not prejudicial error unless "there is a fair risk that no punitive discharge would have been adjudged had the court been so advised." *Id.*, at page 370.

The opinion in this case apparently accepts, not only the rationale of *Hutton,* but also its determination that the instructional error does not justify reversal unless there is a fair risk of prejudice. Yet other cases decided today on the authority of this opinion appear to make reversal of the sentence an inexorable consequence of the failure to instruct. If this is the import of the present opinion, I disagree with it. However, if the majority intend only to hold that the board of review was correct in its determination that the instructional omission is prejudicial in the circumstances of this case, I join in the Court's answer to the certified question, and in affirmance of the decision of the board of review.