UNITED STATES, Appellee

v

ROBERT E. PIERCE, Storekeeper Third Class,
U. S. Navy, Appellant

19 USCMA 225, 41 CMR 225

No. 22,031

February 20, 1970

*Captain Frank A. Nelson,* JAGC, USN, and *Lieutenant Kenneth F. Ripple,* JAGC, USNR, were on the pleadings for Appellant, Accused.

*Colonel C. R. Larouche,* USMC, and *Lieutenant Colonel Charles J. Keever,* USMC, were on the pleadings for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

In this case the Court's concern is with whether the accused was denied his right to a speedy trial.

A special court-martial tried the accused Pierce on November 26, 1968, approximately thirteen months after the end of his absence without leave that lasted approximately fifteen months. Certified defense counsel represented the accused at trial. After a plea of guilty and without defense counsel's having made an issue of the delay, the court sentenced the accused to a bad-conduct discharge and reduction from pay grade E-4 to pay grade E-3 (no confinement or forfeitures). Pierce's record showed two previous convictions by special courts-martial for absence without leave in his then current enlistment.

Before the court deliberated on the sentence, the accused and his mother-in-law testified to the circumstances of his absence. At the start of Pierce's absence his father-in-law was suffering from a lung ailment later diagnosed as cancer. The

**225**

family decided to move from Norfolk, Virginia, to Jacksonville, Florida. By his employment at a service station in Jacksonville, Pierce supported not only his own wife and child but five of his wife's relatives. Near the end of the terminal illness of the father-in-law, the family decided to move back to Norfolk. After returning to Norfolk, Pierce wrongfully used a found credit card to get money to support the family. The record is unclear on whether he was arrested for such wrongful use before he ended his absence without leave. In any event, the unauthorized absence ended on October 24, 1967. Pierce was restricted for two days and then confined until November 30, 1967. From then until his trial November 26, 1968, he was not restricted, except for one day of restriction in December of 1967. After release from confinement he was restored to full duty completely free of restriction. During the time before his civilian and military trials he helped to rewrite a supply manual, duty for which a superior officer commended him.

A civilian court sentenced him, apparently in early October 1968, to five years of probation for twenty-three counts of wrongful use of the credit card and required him to make restitution at the rate of $50.00 a month. The amount required to be restored was approximately $800.00 resulting from the credit card violations and about $1,100.00 in attendant court costs.

The military charge sheet against the accused is dated October 22, 1968. That his trial occurred on November 26, 1968, we noted above.

The trial record contains no direct or express discussion of why Pierce's military trial was delayed for more than a year. We are urged to hold that although no speedy trial issue was raised at trial the Government was nonetheless obligated to provide in the record an explanation of the time lapse.

In many earlier cases this Court has expressed its profound concern that

Articles 10 and 33 of the Uniform Code of Military Justice, 10 USC §§ 810 and 833, respectively, be complied with. United States v Schalck, 14 USCMA 371, 34 CMR 151 (1964); United States v Williams, 16 USCMA 589, 37 CMR 209 (1967); and United States v Parish, 17 USCMA 411, 38 CMR 209 (1968).

Since the case before us was tried by special court-martial, Article 33 is inapplicable here. The pertinent statutory requirement in this instance is the second sentence of Article 10, Code, supra:

". . . When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

Standing alone these words provide no adequate clue to the application of such a requirement when an accused is released after early confinement but is not promptly tried. In some instances the accused could benefit from a delay in his military trial until after a trial by a civilian court had occurred. This could have been such an instance, but because no issue was made at trial we are insufficiently informed to decide. A sentence involving confinement or forfeitures, or both, could have complicated or perhaps completely frustrated the provision for restitution that may have been crucial to his receiving only a probationary sentence for the twenty-three counts of wrongfully using a credit card. This is true irrespective of which trial came first; the arguments of trial defense counsel concentrated on the harmful consequences to the accused of a sentence involving confinement.

Our decision here may have important consequences because of the probability that as a result of the decision in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), members of the armed forces often will be liable for trial by

court-martial either before or after a trial by a civilian court. An ostensible right can be converted into a handicap if military authorities precipitately decide on a military trial, the results of which can complicate or limit the negotiation of the terms of a settlement of the civilian offense.

In United States v Ewell, 383 US 116, 120, 15 L Ed 2d 627, 86 S Ct 773 (1966), Mr. Justice White outlined for the majority the fundamental considerations in the right to speedy trial:

". . . This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself."

In this case the only pretrial restraint occurred during the period immediately after the accused returned to military control. During this time the charges were being considered. Once the preliminary inquiries had been completed the accused had no restraint placed upon his liberty. The testimony of the accused at trial showed that his "anxiety and concern" were attributable not to the absence charged but to the length of confinement possible as a result of his civilian crimes. The delay here did not impair the ability of the accused to defend himself—in fact it is more likely that he benefited from it.

If an accused suffers little pretrial confinement and makes no issue at trial of a delay in his being summarily charged and tried, to avoid a remand when such an issue is raised on appeal must the Government introduce some evidence into the record of the considerations that caused a delay of trial? Such a result would require risky judgments of whether such evidence should be introduced when the trial occurred one week, one month, or three months after the offense was known. These judgments would be complicated by many variables such as the length and nature of the pretrial confinement or restriction. Courts-martial would tend to become guessing games.

We are persuaded that even if there were a prima facie violation of Article 10 in this case, the accused was not harmed because of the delay in his military trial and that the failure of his qualified legal counsel to raise the issue at trial resulted from a recognition that the delay was perhaps beneficial to the accused. In so deciding we are aware that the accused did not have counsel during his confinement and much of the wait before military trial. Consequently, his failure to demand a speedy trial during that period is understandable. But if there were a valid issue of speedy trial it should have been raised at the trial, Schalck, Jennings, and White[1] notwithstanding—keeping in mind that here we are concerned only with the operative effect of Article 10, Code, supra. Cf. United States v Przybycien, 19 USCMA 120, 41 CMR 120 (1969), and United States v Hawes, 18 USCMA 464, 40 CMR 176 (1969).

Our holding here should not be misunderstood as constituting a relaxation of the emphasis on speedy trial. The general record of the armed forces on speedy trial requires no apology when this record is compared with the practice that exists in some civilian jurisdictions, even after an allowance for the greater likelihood of pretrial bail in those jurisdictions. We nonetheless would like to see military procedure as the exemplar of prompt action in bringing to trial those members of the armed forces charged with offenses.

Though this defect was not raised on

---

[1] United States v Schalck, 14 USCMA 371, 34 CMR 151 (1964); United States v Jennings, 17 USCMA 114, 37 CMR 378 (1967); United States v White, 17 USCMA 462, 38 CMR 260 (1968).

appeal,[2] we note that the sentencing instructions do not include ■ advice that the court should vote on proposed sentences "beginning with the lightest" as required by paragraph 76b(2) of the Manuals for Courts-Martial, United States, 1951, and 1969 (Revised edition). We have described this requirement as "essentially" a part of military due process, and this omission normally requires reversal of a sentence, for "[a] court, uninstructed as to this procedure, may well believe that the voting could properly commence with consideration of the most severe proposed sentence." United States v Johnson, 18 USCMA 436, 437, 40 CMR 148 (1969). In that case the sentence included a dishonorable discharge, total forfeitures, and confinement at hard labor for two years.

In United States v Newton, 18 USCMA 562, 40 CMR 274 (1969), the same instructional deficiency resulted in reversal of a sentence that consisted of a bad-conduct discharge, total forfeitures, confinement at hard labor for thirty-six months, and reduction. We took the same action in United States v Conner, 19 USCMA 74, 41 CMR 74 (1969), where that accused received a bad-conduct discharge, confinement at hard labor for four months, and forfeiture of $97.00 per month for the same period; in United States v Dues, 19 USCMA 130, 41 CMR 130 (1969), where the sentence included a bad-conduct discharge, confinement at hard labor for six months—reduced to four by the convening authority—and forfeiture of $75.00 per month for the same period—reduced by the supervisory authority to $73.00 per month; and in United States v McDowell, 19 USCMA 151, 41 CMR 151 (1969), involving an accused who was sentenced to a bad-conduct discharge and confinement at hard labor for five months—reduced to four by the supervisory authority.

Convinced by the evidence and the defense argument that Pierce needed a source of income to aid in his family's survival and in the restitution of funds wrongfully taken, for which he was tried by civilian authorities, the court-martial sentenced this accused to only a bad-conduct discharge and reduction to the pay grade of E-3. For an unauthorized absence that exceeded a year's duration, a lesser sentence, even if preceded by complete instructions, can hardly be conceived. Under the circumstances in this case, Pierce has not suffered a deprivation of a substantial right justifying invocation of the "plain error" rule. Cf. United States v Flippen, 16 USCMA 622, 37 CMR 242 (1967); United States v Stephen, 15 USCMA 314, 35 CMR 286 (1965); Himmelfarb v United States, 175 F2d 924 (CA 9th Cir) (1949), certiorari denied, 338 US 860, 94 L Ed 527, 70 S Ct 103 (1949); Freeman v United States, 158 F2d 891 (CA 9th Cir) (1946), certiorari denied, 331 US 805, 91 L Ed 1827, 67 S Ct 1187, 1188 (1947); Berry v United States, 253 F2d 875 (CA DC Cir) (1958); United States v McNeil, — F2d — (CA DC Cir) (decided October 31, 1969); Rule 52(a), Federal Rules of Criminal Procedure; and Article 59(a), Uniform Code of Military Justice, 10 USC § 859.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

While I agree with my brothers' ultimate disposition of the accused's claim that he was denied a speedy trial, I disassociate myself from their reasoning. Since the issue was not raised at trial, the record does not disclose why the accused was initially confined for thirty-five days and then released without charges being pre-

---

[2] United States v Johnson, 18 USCMA 436, 40 CMR 148 (1969), was published subsequent to the grant of review in this case.

ferred.[1] Nor is there any explanation for the Government's delay in preferring charges for a simple absence-without-leave offense, until three hundred sixty-three days after the accused's return to military control. To reason, as my brothers do, that the failure to raise the issue at trial resulted from a recognition that the delay was perhaps beneficial to the accused, is sheer speculation in which we should not indulge. Courts cannot decide cases on mere speculation. They deal in facts and law.

I dissent to that portion of the principal opinion which holds that the accused was not prejudiced by the law officer's failure to include in his voting instructions on sentence that the court should begin to vote on proposed sentences "beginning with the lightest," as required by paragraph 76b(2) of the Manuals for Courts-Martial, United States, 1951, and 1969 (Revised edition). As a majority of this Court said in United States v Johnson, 18 USCMA 436, 437, 40 CMR 148 (1969):

"The voting procedure, prescribed in paragraph 76b(2) of the Manual that the lightest proposed sentence be voted on first, is, in our opinion, more than a mere technicality. It is, essentially, a part of military due process. Winthrop, supra, and the Manual have long recognized this presentencing procedure as a regular part of the voting process. See discussion in United States v Blair, 24 CMR 869, 871–872. Whether or not it is followed may well have a substantial effect upon the sentence adjudged against an individual accused. It is a valuable right accorded an accused by directive of the President (United States v Smith, supra) and should not be lightly regarded. Cf. United States v Turner, 9 USCMA 124, 25 CMR 386; United States v Hutton, 14 USCMA 366, 34 CMR 146; United States v Turner, 16 USCMA 80, 36 CMR 236; United States v Koleff, 16 USCMA 268, 36 CMR 424; United States v Yocom, 17 USCMA 270, 38 CMR 68; United States v Wheeler, 17 USCMA 274, 38 CMR 72.

"A court, uninstructed as to this procedure, may well believe that the voting could properly commence with consideration of the most severe proposed sentence. Since we have no way of ascertaining what took place, the voting having been conducted in secret, and, inasmuch as, in our opinion, the matter concerned a substantial right of the accused, the doctrine of plain error may be properly invoked. United States v Stephen, 15 USCMA 314, 35 CMR 286. Reversal as to sentence is required."

See also United States v Conner, 19 USCMA 74, 41 CMR 74 (1969); United States v Dues, 19 USCMA 130, 41 CMR 130 (1969); United States v McDowell, 19 USCMA 151, 41 CMR 151 (1969); United States v Newton, 18 USCMA 562, 40 CMR 274 (1969).

The majority, in this case, distinguish these holdings on the ground that they do not believe this accused suffered a deprivation of a substantial right justifying invocation of the plain error rule because his sentence was considerably less than that which could have been imposed by the court.

Such a test is, in my view, in direct contradiction of the *Johnson* holding that the voting procedure is "essentially, a part of military due process." Essential means indispensable. Webster's Third New International Dictionary, Unabridged, 1961. And where a denial of due process of law is concerned there can be no test as to prejudice. See United States v Clay, 1 USCMA 74, 1 CMR 74 (1951). The rights and privileges of military due process are based on the law as enacted by Congress. Paragraph 76b (2), Manual, supra, was prescribed by the President pursuant to power specifically delegated to him under Article 36(a) of the Code, supra, and has the force of law. United States v Smith, 13 USCMA 105, 32 CMR 105 (1962). While an accused may waive

---

[1] See Article 10, Uniform Code of Military Justice, 10 USC § 810.

some of the safeguards granted him by Congress (United States v Lucas, 1 USCMA 19, 1 CMR 19 (1951)), the court cannot waive them for him. United States v Clay, supra; see also Bruno v United States, 308 US 287, 293–294, 84 L Ed 257, 60 S Ct 198 (1939).

But even were I to concede that the error in this case could be tested for prejudice, I cannot agree that under the circumstances of this case, the accused has not suffered a deprivation of a substantial right justifying the invocation of the plain error rule. See United States v Stephen, 15 USCMA 314, 35 CMR 286 (1965).

For an unauthorized absence that exceeded a year's duration, the accused was sentenced to only a bad-conduct discharge and reduction to the pay grade of E-3. In the more than a year between his return and his trial the accused was on duty, performed well, and assisted in the preparation of a supply manual for which he was commended by a superior officer. His rehabilitation was apparent. Had the court been properly instructed, they may well have decided that his value to the service was such that retention was in order. Under such circumstances we should not speculate as to what sentence the court may have returned. My brothers state that, "For an unauthorized absence that exceeded a year's duration, a lesser sentence, even if preceded by complete instructions, can hardly be conceived." Such a view is wholly unwarranted, since it involves an intrusion into an area of judgment that is exclusively reserved for the members of the court. At that level, they, and they alone, are the arbiters of what is an appropriate sentence.

I would reverse the decision of the board of review as to sentence and order a rehearing thereon.