**UNITED STATES**

v.

**Airman Basic Jeffrey W. POWELL, FR 431–27–5009, United States Air Force.**

**ACM S27292.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 17 Oct. 1986.

Decided 24 April 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Joe R. Lamport and Lieutenant Colonel Robert E. Giovagnoni.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION

STEWART, Judge.

At a special court-martial the appellant was convicted of attempted wrongful appropriation and forgery contrary to his pleas, and failure to repair in accordance with his pleas. The sentence imposed by the military judge, and approved by the convening authority, included a bad conduct discharge and two months confinement.

The appellant avers that the forgery specification does not state an offense in that the alleged forged document, if true, would not create a legal obligation or impose a legal burden on the recipient of the paper. He also challenges the attempted wrongful appropriation conviction on the grounds the evidence is legally insufficient and, although the specification alleges "property" was the object of the attempted taking, the facts of the case show the object was "services." Lastly, he moves for dismissal of these two charges for lack of subject matter jurisdiction.

In our view this latter assertion is clearly without merit, and, accordingly, discussion is not warranted. On the other hand, while we disagree with his challenges to the attempted wrongful appropriation conviction, we conclude he is correct concerning the forgery specification.

On 2 July 1986 the appellant went to the Blytheville Federal Credit Union with a view to borrowing about $200.00. He already owed that credit union $199.20. He

discussed the proposed new loan with a Mr. Warren, a Blytheville Federal Credit Union loan officer. Together, with the appellant providing the information, they partially filled out a loan application. The proposed new loan was for $200.80. Pursuant to information provided by the appellant Warren entered the following items on the application: the purpose of the loan was to buy furniture, the appellant's current address was at an apartment off base, and the appellant's date of separation was 31 October, 1990. That information was false in that the correct date was 31 October 1987. Warren also gave the appellant a form entitled "Verification of Military History." The appellant was to complete the application form, sign it, complete the "Verification of Military History" form, obtain his commander's or first sergeant's signature verifying the correctness of the information on the latter form, and lastly bring all these completed papers back to Warren.

The appellant then left the credit union with the papers. On the application he indicated he was married, which was false, and entered "N/A" to the following questions: "Have you ever been arrested/convicted?" and "Had a UIF, or is one pending?". As a matter of fact, he had been convicted in civilian court of DWI earlier in the year and had a UIF containing letters of reprimand for driving while drunk, failure to repair, and issuing checks which were dishonored for insufficient funds. He also falsely indicated he was renting his quarters for $205.00 per month and had one 18 year old dependent. Further, he wrote he had only two outstanding debts totaling $207.00, when in fact he was additionally indebted to a Mr. Wallin for $805.00 for automobile repairs.

Also the appellant completed the "Verification of Military History". On this form he acknowledged he had been "arrested/convicted" and that he "Had a UIF". However, once again he falsely listed as his local address the off base apartment. Furthermore, without authorization he wrote what appeared to be his first sergeant's signature below the statement, "I have re-

viewed the above statements and find them correct ..."

After signing the papers where he was required, the appellant returned them to the credit union the same day, 2 July 1986. Credit union officials reviewed them for the purpose of determining whether to grant the loan but disapproved the loan because they believed he already was over extended with financial obligations.

In a statement made to the Security Police the appellant related that he needed the money from the requested loan to help pay off Mr. Wallin. He admitted signing his first sergeant's name to the "Verification of Military History", and he said that he thought having dependents would help get the loan approved.

Credit union officials testified that they relied on the information on the two forms in making their loan decisions. For instance, $205.00 a month rent would be taken into consideration in determining the borrower's ability to repay a loan from the credit union, as would an outstanding loan of $805.00, which the appellant did not report. Furthermore, the first sergeant's signature was important to the credit union. Both the credit union vice president and the appellant's first sergeant testified as to an informal arrangement between the credit union and Blytheville AFB first sergeants. If the first sergeant merely signed the verification form, that meant that not only was the information correct, but also that the first sergeant had nothing adverse to say about the loan applicant. If the first sergeant also added his telephone number, that meant there was something about the loan applicant that the credit union should know. The appellant's first sergeant testified he would not have signed the verification form because the appellant's local address on it was incorrect, but if he had signed it, he would have added his telephone number. The verification form had no telephone number for the first sergeant on it.

An essential element of the offense of forgery under Article 123, U.C.

M.J., is, "That the signature or writing was of a nature which would, if genuine, apparently impose a legal liability on another or change another's legal rights or liabilities to that person's prejudice ..." Manual for Courts-Martial (M.C.M.), 1984, paragraph 48b(1)(b) and (2)(b). "[T]he false making or altering, with intent to defraud, of a writing which could not impose a legal liability, as a mere letter of introduction," is not forgery. M.C.M., 1984, paragraph 48c(4). Some documents, such as checks and receipts, on their face appear to impose or change legal liabilities. Other documents, such as identification cards (*United States v. Davis*, 4 M.J. 752 (A.F.C.M.R.1978)), bank signature cards (*United States v. Chandler*, 17 M.J. 571 (A.F.C.M.R.1983)), and a "First Sergeant's Slip" submitted with a loan application (*United States v. Mulvaney*, ACM S26511, (A.F.C.M.R. 13 December 1984) (unpublished opinion)), do not on their faces appear to impose or alter legal liabilities. Where a document does not appear on its face to impose or change legal liability to another's prejudice, there is no forgery unless extrinsic facts demonstrate the document appeared to impose or change legal liability. M.C.M., 1984, paragraph 48c(4). Such extrinsic facts must be pleaded. *United States v. Davis, supra,* and *United States v. Chandler, supra.*

■ The pertinent allegations in the case before us read that the appellant "did ... falsely make the signature of Senior Master Sergeant William R. Jones, to a certain document, to wit: a Blytheville Federal Credit Union Verification of Military History, which document would, if genuine, apparently operate to the legal harm of another, and which could be used to the legal harm of the Blytheville Federal Credit Union in that the [document] was submitted to the [credit union] on 2 July 1986, by [the appellant], to induce the [credit union] to loan" the appellant $200.80. We note at the outset that the document in question does not on its face appear to impose or change legal liability. The credit union does not appear legally obligated in any manner. We also note that apparent "legal harm" to the credit union, not apparent

legal liability, is alleged. We do not believe "legal harm" is necessarily the equivalent of legal liability. However, we need not decide that issue for we see no extrinsic facts pleaded in the specification which would apparently impose legal liability upon the credit union. The allegation that the appellant submitted the false document "to induce" the credit union to loan him money amounts to nothing more than would the analogous use of a false letter of introduction to obtain a job.

Accordingly, we find the forgery specification does not sufficiently allege the offense of forgery under Article 123, U.C.M.J., and that specification and its charge must be dismissed. Our decisions in *Davis* and *Chandler* are controlling.

On the other hand, we believe the evidence is sufficient to support the conviction of attempted wrongful appropriation. Our predecessor held long ago that the making of false representations in obtaining a loan supports a conviction of obtaining property by false pretenses. *United States v. Urso*, 3 C.M.R. 611 (A.F.B.R.1952). Here the evidence showed that the appellant applied to the Blytheville Federal Credit Union for a $200.80 loan, submitting an application and a Verification of Military History which were false in several material respects. He even admitted that he falsified certain information because he thought it would help him get the loan.

■ Where false representations or pretenses are the basis for a consummated wrongful taking, the owner of the property taken must have relied upon those representations or pretenses if a stealing or wrongful appropriation offense is to be made out. In other words, the false representations must at least in part induce the owner to relinquish his property. M.C.M., 1984, paragraph 46c(1)(e). The cases cited by the appellant, *United States v. Mulvaney, supra,* and *United States v. Turner,* 23 C.M.R. 674 (C.G.B.R.1957), *affirmed,* 9 U.S.C.M.A. 124, 25 C.M.R. 386 (1958), stand for that proposition. They are not applicable to an unconsummated taking, i.e. an

attempt. Thus, the facts that the credit union turned down the loan because the appellant was already financially over-extended and, consequently, was not harmed by the false information, are immaterial in this case.

■ An attempt is a frustrated effort to intentionally commit a specific crime. Article 80, U.C.M.J., defines it as, "An act, done with specific intent to commit an offense ... amounting to more than mere preparation and tending, *even though failing*, to effect its commission ..." (emphasis supplied.) There is always some reason why the actor fails to consummate the crime.[1] Even factual impossibility does not negate guilt of an attempt. *United States v. Thomas and McClellan*, 13 U.S.C.M.A. 278, 32 C.M.R. 278 (C.M.A.1962); *United States v. Henderson*, 20 M.J. 87 (C.M.A. 1985). For example, "[A] person who reaches into the pocket of another with the intent to steal that person's billfold is guilty of an attempt to commit larceny, even though the pocket is empty." M.C.M., 1984, paragraph 4c(3). Similarly, the appellant was guilty of attempted wrongful appropriation when he sought to induce the credit union to loan him money by providing false information even though the credit union would not loan him money because he was financially over-obligated. Legal impossibility is not, in our opinion, at issue in this case.

■ Nor do we see any merit in the appellant's claim that the facts of the case show that the object of the offense was "services" rather than "property" as alleged. The record is replete with evidence that the appellant was seeking a loan of about $200.00. Even in his statement to the Security Police he admits, "I needed the money," to pay off an amount he owed for automobile repairs.

We set aside the findings of guilty of the forgery. Charge III and its Specification are dismissed. We find no other error

which materially prejudiced the substantial rights of the appellant.

■ The military judge considered the forgery and attempted wrongful appropriation convictions as multiplicious for sentencing purposes. However, forgery is a much more serious offense than attempted wrongful appropriation of $200.00. *See* M.C.M., 1984, paragraphs 4e, 46e(2)(b), and 48e. We will not speculate as to what sentence the military judge would have adjudged had he not had the serious offense of forgery before him. Accordingly, we believe a rehearing on the sentence, rather than a reassessment by us, is the appropriate remedy in this case.

The findings of guilty, as modified, are affirmed, and the sentence is set aside. A rehearing on the sentence may be held.

Judge LEWIS concurs.

SESSOMS, Senior Judge (concurring in part and dissenting in part).

I concur with the majority in the dismissal of the forgery offense. I would go further and dismiss the attempted wrongful appropriation charge. The majority find themselves in the anomalous position of holding the appellant accountable for attempting to commit the offense of wrongful appropriation of money which the credit union would have given him if they had approved his loan. They take this position even though the accused could not have been convicted of the offense of wrongful appropriation had the loan been approved, in the absence of proof beyond a reasonable doubt that the false information provided by the accused was an effective inducing cause for the credit union to part with its property. *United States v. Turner*, 23 C.M.R. 674 (C.G.B.R.1957); findings affirmed 9 U.S.C.M.A. 124, 25 C.M.R. 386 (1958). See also M.C.M. 1984 para. 46c(1)(b); and *United States v. Mulvaney*, ACM S26511, (A.F.C.M.R. 13 Dec 84), (unpublished opinion). Unlike the situation in *Mulvaney*, we need not speculate about the

---

1. We recognize that Article 80(c), U.C.M.J., permits a conviction of an attempt, "although it appears on the trial that the offense was consummated."

effect of the false pretenses in this case. We know that the loan was denied because of the financial condition of the accused as reflected on his application. However, in order to affirm the finding of guilty of the charge of attempted wrongful appropriation, the majority are reduced to speculating as to the extent the credit union officials might have relied upon the false information had the loan been approved. It is true that credit union employees were present in court to testify as to what their normal procedures were, and how much emphasis they usually gave to the type of information erroneously supplied by this accused. But we are still required to speculate as to just how much they would have relied on the false information supplied by this accused had they not summarily disapproved his application. I am convinced that the legal premise upon which the majority opinion rests is just too tenuous to support a conviction of attempted wrongful appropriation.

No one would seriously contend that the appellant did not commit *some* offense, or that he should not be punished for his conduct. However, he should not be convicted of just any offense. The military justice system, when properly administered, is capable of judicially addressing all of those crimes and breaches of good order and discipline in which members of the military services can manage to get themselves embroiled. Appellate courts should not relieve those persons who are charged with the administration of the system of the responsibility for correctly identifying and properly charging each accused with the specific offenses he has committed. To do anything less is to detract from the system and, ultimately, to deprive it of its credibility.

The findings of guilty to Charge II and III and the specifications thereunder should be set aside, and the sentence reassessed. I would approve the findings of guilty to Charge IV and its specification, and only so much of the sentence as provides for confinement for one month.