UNITED STATES, Appellee

v

THOMAS F. CRAWFORD, Private First Class,
U. S. Marine Corps, Appellant

12 USCMA 203, 30 CMR 203

No. 14,516

Decided February 24, 1961

*Lieutenant Colonel E. W. Johnson*, USMC, argued the cause for Appellant, Accused.

*Commander Benjamin H. Berry*, USN, argued the cause for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

On his plea of guilty, a special court-martial convicted the accused of unauthorized absence and adjudged a sentence which included a bad-conduct discharge and reduction to the grade of private. Intermediate appellate authorities affirmed the findings of guilty and the sentence with some modification of the latter. The Acting The Judge Advocate General of the Navy certified the following question for our consideration:

"Whether the reduction in grade portion of the sentence is legal."

The certified question has its basis in the sentence instruction by the president of the special court-martial. In advising the court members on the "maximum punishment which may be imposed" he did not include any instructions on reduction in grade. Nevertheless, the court adjudged a sentence which provided *inter alia* that the accused "be reduced to the rank of Private (E–1)." Before the

board of review, appellate defense counsel contended that in view of the president's failure to mention reduction in grade as part of the maximum sentence, the court-martial could not include that punishment in its sentence. Relying upon United States v Reid, 10 USCMA 71, 27 CMR 145, a Navy board of review, with Member J. Fielding Jones dissenting, overruled the defense objection and affirmed the sentence.

In the *Reid* case the accused, as here, was tried by special court-martial. No instructions on the limits of punishment were given. On review, the board of review held that the omission constituted error. Assessing the effect of the error, the board of review concluded the mistake was not prejudicial to any substantial right of the accused because the maximum punishment for the offenses of which the accused was convicted exceeded that which could be adjudged by special court-martial, and it clearly appears from the record of trial that the court-martial was aware of the limitations on its sentence powers. We sustained that conclusion. The issue here is different. The question is not whether the court members knew or understood the jurisdictional limits of a special court-martial, but whether they could disregard the president's instructions and impose a sentence in excess of the limits set out in those instructions.

Court members are bound by, and should follow, the instructions to them in regard to the findings and sentence. We presume that if a member of the court knows that a particular instruction is wrong, he can properly call attention to the error. But in the absence of correction even erroneous instructions mark out the legal framework within which the court may properly exercise its powers. United States v Goddard, 1 USCMA 475, 4 CMR 67; United States v Rhoden, 1 USCMA 193, 2 CMR 99. In the *Rhoden* case, the instructions setting out the elements of the offense were only sufficient for a lesser offense and stopped short of the actual misconduct charged. We held that the findings of guilty could not go beyond the offense delineated in the instructions. Logic and law indicate that the court-martial is similarly limited by the instructions in regard to the sentence. United States v Linder, 6 USCMA 669, 20 CMR 385. In fact that conclusion underlies our opinion in United States v Larsen, 11 USCMA 555, 29 CMR 371. We held that the instruction in that case did not restrict the court-martial to a sentence which excluded reduction in grade. See also United States v Brown, 26 CMR 758. The instruction here did so limit the court.

We answer the certified question in the negative. So much of the sentence as provides for reduction in grade is set aside. In other respects, the decision of the board of review is affirmed.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

I cannot join with my brothers for the reason that their rationalization is predicated on the conclusion that instructions on the maximum sentence are governed by the same rules which control the president's charge on findings. Such doctrine is false and overlooks entirely the basic difference in the rights and privileges of an accused after conviction and the functional change of court-martial members from jurors to judges. On findings, it is the duty of the members of the court to determine facts, but thereafter, during sentence proceedings, they act as the military counterpart of a civilian judge in imposing punishment.

Before discussing the principal issue I consider it of importance to point out that the answer to the question would be of no consequence if this case did not involve a member of the Naval Service. On July 12, 1960, prior to the time the accused was tried, Article 58a, Uniform Code of Military Justice, 10 USC § 858a (Public Law 633, 86th Congress, 74 Stat 468), became effective, and its

provisions are substantially the same as those of the Executive Order held invalid by my associates in United States v Simpson, 10 USCMA 229, 27 CMR 303. This statute made reduction automatic under certain conditions, but it permitted the Secretary of a Service to prescribe less stringent provisions. Acting pursuant to the authority granted by the enactment of Congress, the Secretary of the Navy imposed the condition that to be effective a reduction must be included in the sentence. That requirement was complied with in this instance, and that leaves for resolution only the question certified.

For the purpose of presenting the issue in its proper perspective, it is important to mention that the statutory necessity for instructing members of courts-martial in open court is of recent origin. Prior to 1948, there was no requirement that a law member of a general court-martial or the president of a special court-martial advise the members on either findings or sentence. By the Act of June 24, 1948 (Public Law 759, 80th Congress), the Articles of War were amended, and Article 31 of that law provided in pertinent part as follows:

". . . It shall be the duty of the law member of a general or the president of a special court-martial before a vote is taken to advise the court that the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt, and that in the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt shall be resolved in the accused's favor and he shall be acquitted; if there is a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no such doubt; that the burden of proof to establish the guilt of the accused is upon the Government." [10 USC (1946 ed, Supp II) § 1502, 62 Stat 632.]

When Article 51 of the Uniform Code of Military Justice, 10 USC § 851, was enacted it placed an additional instructional burden on the law officer and the president of the special court. But, significantly, all that was added was that those functionaries must include in their charge the elements of the offense. So far as I have been able to ascertain there has been no Congressional enactment which required any instruction on the punishment imposable. However, the framers of the Manual considered the question and paragraph 76b(1) of the Manual for Courts-Martial, United States, 1951, advances this principle:

"Before a general court-martial closes to deliberate and vote on the sentence, the law officer may advise it of the maximum punishment which may be adjudged for each of the offenses of which the accused has been found guilty. If a special court-martial has any question as to the maximum punishment it may adjudge in a particular case, it may request the trial counsel to procure and present this information to the court. Such advice and information will be given in open court in the presence of the accused and counsel for both sides and shall be made a matter of record."

When in United States v Rinehart, 8 USCMA 402, 24 CMR 212, a majority of the Court held that the members of courts-martial could not have access to the Manual for Courts-Martial, and applied the proscription not only to general but to special courts as well, it became obvious that someone would have to advise the members on the maximum limits of punishments for the offenses of which the accused was convicted if they exceeded the jurisdictional limits of the court. By decisional evolution this duty was taken away from trial counsel and saddled on the president of the special court. See United States v Turner, 9 USCMA 124, 25 CMR 386. Unless a case is being reheard, he has to refer to the Manual for the appropriate limitations and it is a fair assumption that he is familiar with the various kinds of punishments which may be considered. But, in addition, all individuals in the services are chargeable with knowledge of the Code

**205**

and it is a well-known fact that officers receive instructions on military law. Furthermore, it is common knowledge that reduction to an inferior grade may be one of the punishments imposed by a summary court officer under Article 20, Uniform Code of Military Justice, 10 USC § 820, and nonjudicially under Article 15 of the Code, 10 USC § 815. A person would be overlooking the obvious to reach the conclusion that any person selected to be a member of a special court-martial did not know that reduction is a permissible punishment. If that follows, all members sitting in this case were informed, and manifestly the wording of the sentence is telling evidence to that effect.

Article 19, Uniform Code of Military Justice, 10 USC § 819, provides that a special court may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by the Code with exceptions not material here for reduction is not listed in that category. In United States v Reid, 10 USCMA 71, 27 CMR 145, a majority of the Court held that failure to instruct at all was nonprejudicial for the reason that by their sentence the court-martial members were aware of the sentence limitations, and that principle is inconsistent with the position now taken by my associates. Here, by their verdict, the members of the court furnished unquestionable evidence that they knew reduction was a permissible punishment, and it is certain that the accused and his counsel were likewise advised for at that level no question was raised as to the legality of this sentence. In that connection all servicemen are as well informed on reductions as on other ingredients of punishment and if an absence of all instructions is nonprejudicial to an accused, the failure to mention one ingredient would likewise not harm him. But aside from prejudice and the everyday knowledge of court members, there is no limitation on reduction by statute, Executive Order or otherwise, and a president of a special court, except in a case of a rehearing or new trial, has no authority to curtail the court-martial sentence on that form of punishment.

As I understand the law, there is a different legal philosophy underlying the reason for giving or not giving instructions on findings and sentence. When a sentence is returned by a court, reviewing authorities are furnished with the very ingredients agreed upon by the court members. In findings they are not, for the verdict is general. For that reason, among others, when instructing on findings the president of a special court must prescribe the exact formulae which govern the triers of fact. They must weigh the facts according to his advice and if they do not, they have erred as a matter of law. Instructions on findings vary with factual issues and the president must tailor his charge on the law to the testimony adduced. In the case of instructions on sentence, that principle is not involved because the maximum penalty for the offense is fixed by law and does not change on a case to case basis. Congress has granted court members the authority to impose any sentence not prohibited by the Code subject to jurisdictional limitations of the court and those prescribed by the President. If there is a necessity in having the court-martial members informed of the maximum limits of punishment, it is solely to keep them from going beyond legal bounds where maximums have been set. The reason is neither to restrict them when there is no limit nor to tell them the sentence they must impose, for they alone make that determination.

A cursory inspection of the Table of Maximum Punishments will disclose that the President has imposed ceilings in only three areas, and these are punitive discharges, confinement, and forfeitures. The other fields have been left open to the discretion of the court-martial and where there is no limitation, any punishment not cruel or unusual may be imposed. Unless that is permissible, then many sentences we have affirmed in prior cases should have been set aside. If this Court is going to open the floodgates so wide that a president of a special court-martial must enumerate every permissible form

206

of punishment which a court-martial may impose to make its assessment legal, then we are charting a course in troubled waters. The difficulties to be encountered with such a sweeping concept were mentioned obliquely by Judge Ferguson in his dissent in United States v Hollis, 11 USCMA 235, 29 CMR 51:

". . . Implicit in this reasoning, of course, is the conclusion that the law officer is under a duty to set forth to the members of the court all the possible penalties which they might impose. I suggest that such is not the rule previously enunciated by this Court or any other military appellate body. On the contrary, we have held only that the law officer must instruct the members of the court-martial concerning the maximum limitations upon their power to punish. United States v Turner, 9 USCMA 124, 25 CMR 386. The rationale of that limited requirement certainly involves the concept that court members are sufficiently familiar with such penalties as hard labor without confinement, reduction, reprimand, restriction, and the like, that they need not be set forth by the law officer in inexhaustible succession." [11 USCMA at page 239.]

In United States v Cuen, 9 USCMA 332, 26 CMR 112, we discussed a situation where the president of a special court-martial had failed to give any instructions on the maximum sentence imposable. There my associates assumed and discussed at length the legality of a sentence which imposed a fine. Under their interpretation of certain sanctions, they concluded a fine was greater punishment than a forfeiture, but not one word was said about any part of the sentence, much less that portion imposing a fine, being illegal for lack of instructional guidance. Therefore, the rationale of that opinion ought to require a holding that this sentence is valid.

My brothers ofttimes say that military procedure should be in the image of the civilian practice. If that concept was given consideration in the sentence field, then this case would be resolved contrary to its present disposition. When a court-martial is deliberating on the appropriateness of sentence, the members have on the robes of civilian judges. No one would deny to a judge the right to look to the statutes for the appropriate sentence, as they are the proper sources of his knowledge. The same rule ought to be part of military law, for there is nothing in the Code or in the Table of Maximum Punishments which should be hidden from court members. There can be no command influence on permissible limits of punishment, for Congress and the President have set them and the law should not be made wandering and vagrant by every slip of a special court-martial president. The argument that the ingredients must be given in open court, or otherwise the accused and the court members will not know the maximums, loses its force when there are no limits. Moreover, when deliberating on sentence, a president of a special court has no more power, authority, or discretion that the other members. To hold that he can go to the law for his information, but others on the same plane cannot, is to impose an arbitrary distinction which is illogical and unrealistic. We can write reams of pages on this subject but, regardless of what we say, we cannot lay down a workable rule which denies to court members wide latitude in the sentences they impose. Perhaps in this case, an accused will save a few dollars but in the long haul many will suffer for if members know they cannot render a sentence in any unmentioned area, I have good reasons to believe that some of the lesser penalties will not be invoked.

In my consideration of this question, I have not overlooked our cases which have concerned erroneous instructions on the maximum sentence. They are inapposite in this setting, for obviously a court member could not remember each limitation placed on every offense and, in the absence of the Tables, he must have some guidance regarding penalties where ceilings have been prescribed. Here he is not faced with that problem, for the jurisdictional limits of a special court never

vary, regardless of the crimes involved, and both special and general courts may, unless proscribed by prior proceedings, always impose reduction as there is no limitation on imposition of that punishment. However, when court members are informed that the maximum on types of sentence where limits have been set is greater than the ceiling prescribed, they may be misled as to the relative seriousness of the offense. But even then it is generally known in the military community that the maximum sentence is prescribed for the most aggravated kind of the particular offense. Seldom do the courts impose the maximum penalty, for the members genuinely try to assess the punishment they believe appropriate, and in many instances we have held that stating a maximum greater than the limit set by the President is a *de minimis* error. We could not reach this conclusion if we believed that court members did not understand that the instructions given on maximum sentences were at the far limit of the scales of punishment and not the criteria for appropriateness.

Finally, I mention that post-conviction proceedings are not hedged in with the strictness required before findings. When guilt or innocence is being determined, many protective cloaks are thrown around an accused. However, most courts relax the exactitude after a jury has returned a verdict of guilty, and judges have wide discretion in assessing punishment with the statutory limit as their ceiling. Obviously, in civilian courts no instructions are required, but in the event a judge sentences a person to punishment in excess of that authorized by law, an appellate court usually reduces it to legal limits. In this case, if reduction in grade was not authorized by the Code, then the disposition ordered by the Court would be proper. However, the sentence imposed in this instance is well within the jurisdictional limits of the special court-martial and should be affirmed.

For the foregoing reasons, I would answer the certified question in the affirmative.