**UNITED STATES, Appellee,**

v.

**Karen E. MOTSINGER, Airman Basic
U.S. Air Force, Appellant.**

No. 66,823.
ACM S28354.

U.S. Court of Military Appeals.

Argued Jan. 7, 1992.

Decided June 5, 1992.

For Appellant: *Captain George F. May* (argued); *Colonel Jeffrey R. Owens* (on brief); *Major Ronald A. Gregory.*

For Appellee: *Captain James C. Sinwell* (argued); *Lieutenant Colonel Brenda J. Hollis* and *Major Paul H. Blackwell, Jr.* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A special court-martial composed of officer members convicted appellant of larceny and false swearing, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. The court-martial sentenced appellant to a bad-conduct discharge, confinement for 45 days, and a $500 fine. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence without opinion on October 11, 1990.

This Court granted review to consider two issues:

I

WHETHER THE ADJUDICATION OF A FINE WAS PROHIBITED BY THE MILITARY JUDGE'S FAILURE TO INSTRUCT THE MEMBERS THAT A FINE WAS AN AUTHORIZED PUNISHMENT.

II

WHETHER THE COURT–MARTIAL UNLAWFULLY IMPOSED A PUNITIVE DISCHARGE BY ADJUDGING THIS PUNISHMENT FOR REASONS OF QUALITY FORCE.

During his oral instructions on sentencing, the military judge made no mention of a fine, but he submitted a sentence to worksheet to the court members, with the

agreement of counsel for both sides, which contained the following instructions:

> Ordinarily, a fine should not be adjudged unless the accused was unjustly enriched by the offense. The total of your fine may not exceed the total of the maximum permissible forfeiture. If a fine is adjudged, forfeitures may not be imposed.

Appellant now asserts that a fine was not an authorized punishment because it was not mentioned in the military judge's sentencing instructions. She relies on *United States v. Crawford*, 12 USCMA 203, 30 CMR 203 (1961), in which we held that it is error for the court to disregard the sentencing limits set out in the instructions, even if those instructions are incorrect. Since the president of the court-martial in *Crawford* did not mention reduction in grade as an authorized punishment, we held that the court members exceeded the sentencing limits established by the president's instructions when they imposed a reduction in grade.

██ Unlike *Crawford*, appellant's case does not involve a total failure to instruct on a specific punishment, but only a failure to mention it in oral instructions. As we said in *United States v. Caid*, 13 USCMA 348, 352, 32 CMR 348, 352 (1962): "While we do not recommend the procedure of presenting instructions on the sentence through the medium of a worksheet, where, as here, all the parties to the trial have examined it in open court and agreed that it constitutes a part of the sentence advice, we are inclined to find no error in its use." In the instant case, appellant's trial defense counsel not only agreed to use of the sentence worksheet, but also urged the court members to impose a fine instead of a punitive discharge. We hold that use of the sentence worksheet in lieu of oral instructions on imposition of a fine was not error and did not preclude the court-martial from imposing a fine on appellant.

We turn next to the bad-conduct discharge. During the sentencing proceedings, trial counsel argued:

> Mr. President, members of the court, as you have seen through all the evidence and the sentencing evidence in this case, it has been about lying and thieving. The accused stole from a different student airman at this base, on not one, not twice, but three different occasions.... Three strikes and you're out.... Not only did she steal but she lied about stealing.
> Now the only appropriate sentence in this case is to give her a bad-conduct discharge. She has forfeited any right or claim she has to continue service in the Air Force....'
>
>     *    *    *    *    *    *
>
> Her life is not going to be ruined if she gets a bad-conduct discharge. In fact if you separate her from the service, that can probably be one of the best things you could do for her, and let her get on with the rest of her life, because what she has done, stealing from fellow airmen in a training environment, if you retain her and send her back to her unit, that is definitely going to be the wrong message that needs to be sent in this particular case.

The defense sentencing argument focused on appellant's youth, immaturity, deprived family life, and her remorse. Trial defense counsel argued that appellant should be punished, "perhaps fined," but not given a bad-conduct discharge.

The prosecution's closing argument again was directed toward a discharge from the Air Force:

> Now the defense counsel asked you several rhetorical questions. Here's another one. Would you really want this individual working for you? I don't think so. And if you retain her, if you do not give her a bad-conduct discharge, then that means that she is going to be working for somebody somewhere in the Air Force. Is this really the individual—after you have seen all the evidence—that we need in the United States Air Force? Even defense counsel in his closing argument talked about that she did something wrong.... And if you retain her

in the Air Force, you will be sending the message to individuals in the 93d Student Squadron, the 96th Student Squadron. . . .

At this point the military judge interrupted trial counsel and stated:

Captain Greenfield, I am going to stop you here. We are not talking about retention or a discharge. It is a punitive discharge, and if the court members do not vote for a punitive discharge, that is certainly not a vote for retention as it is in a discharge board. I just want the members to be aware of that.

■ In a letter to the convening authority after the trial, the president of the special court-martial asked the convening authority to exercise clemency by suspending the bad-conduct discharge. He stated, "The conviction and the confinement were well justified by the crime; however, the BCD I believe was more a recognition of quality force and impending force drawdown requirements." The court-martial president did not say whether he was disclosing his personal reasons for voting for a punitive discharge or merely surmising what might have motivated the other members' votes. Appellant argues that the court-martial president's letter is proof that she was harmed by trial counsel's improper argument.

We hold that the court-martial president's letter may not be considered in the disposition of this case. A court member is prohibited from impeaching the sentence by offering a post-trial affidavit or testimony regarding sentencing considerations unless it relates to issues of "extraneous prejudicial information," "outside influence" on court members, or "unlawful command influence." Mil.R.Evid. 606(b), Manual for Courts–Martial, United States, 1984; RCM 1008, Manual, *supra; United States v. Huber,* 12 USCMA 208, 30 CMR 208 (1961). Since the court-martial president's letter does not clearly fall under any of the exceptions to Mil.R.Evid. 606(b) and RCM 1008, we will not consider it.

■ To the extent that trial counsel's sentencing argument blurred the distinction between a punitive discharge and administrative separation from the service, it was improper. *See United States v. Ohrt,* 28 MJ 301, 306 (CMA 1989) (sentencing proceeding "not intended to be a vehicle to make an administrative decision about whether an accused should be retained or separated"). Trial defense counsel's failure to object to the argument is understandable in light of the military judge's interruption and *sua sponte* curative instruction. We hold that any error arising from trial counsel's improper sentencing argument was cured by the military judge's instruction.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.