# UNITED STATES

v.

**Airman James S. COMMANDER, FR218–84–7624, United States Air Force.**

## ACM 30038.

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 April 1992.

Decided 13 Jan. 1994.

Appellate Counsel for the Appellant: Colonel Terry J. Woodhouse, Major Mary C. Yastishock, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, and Major John H. Kongable.

Before RAICHLE, YOUNG, and PEARSON, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Judge:

Contrary to his plea, a general court-martial composed of members convicted appellant of wrongfully possessing anabolic steroids. Article 112a, UCMJ, 10 U.S.C. § 912a (1988). He was acquitted of wrongfully using, introducing onto a military installation, and soliciting another to possess, anabolic steroids. The court members sentenced appellant to a bad-conduct discharge and reduction to E–1. Appellant assigns five errors, which we have broken down into six[1]: (1) The evidence is legally insufficient to support a finding of guilt; (2) the military judge erred in instructing the court members on determining the legitimacy of appellant's steroid prescription; (3) the military judge erred in denying appellant's motion for a post-trial session; (4) the sentence is unduly severe; (5) the military judge erred in denying appellant's motion to dismiss for failing to state an offense; and (6) the military judge erred in denying appellant's motion for a finding of not guilty. We find no errors and affirm.

## I. Facts

In the late spring, early summer of 1991, the base joint drug enforcement team (JDET) (a joint venture between the security police and agents of the Air Force Office of Special Investigations (AFOSI)), began looking for anabolic steroid users among the weight lifters at the base gymnasium. JDET members recruited two weight lifters, Airman A and Sergeant W, to report any information they heard concerning the use of anabolic steroids.

Appellant was a 23–year–old fire team member of the Security Police, a bodybuilder, and a karate competitor. In early July of 1991, shortly before he was due to compete in a karate tournament, appellant returned to Hahn Air Base, Germany, from emergency leave in the United States. The emergency leave interfered with his training schedule, so appellant decided to use anabolic steroids to "get back into the rhythm and be faster and quicker, and stronger." Having previously discussed the possibility of receiving vitamin B–12 injections with a physician at the base hospital, appellant knew he would not be prescribed any medications unless it were for an ailment. Appellant discovered that a German physician near the base would prescribe steroids for the purpose of building muscle mass. He was not referred to the German physician by a military medical practitioner. Appellant claims that Airman A told him about the German physician and, at Airman A's request, he took Airman A to the physician and a pharmacy so Airman A could obtain steroids. Airman A, the AFOSI informant, claims he learned about the German

---

1. Appellant presented the errors listed here as (1) and (2) as one error (I). This violates Courts of Military Review Rules of Practice and Procedure, rule 15a ("setting forth separately each error asserted"), 22 M.J. at CXXXIII; *accord,* Int. Rule 5–5a. Different errors require differing analysis or requiring differing standards of review should not be joined. To do so simply confuses the matter unnecessarily.

physician from appellant. Appellant told Airman A to use a fictitious name, told him the appropriate steroids to get, and once Airman A had obtained the prescription, took him to the pharmacy where he could have it filled.

Appellant testified that on 12 July 1991 he told the German physician that he wanted steroids for bodybuilding. The physician prescribed two anabolic steroids, Testoviron and Deca–Durabolin, and instructed appellant on how to use them. The physician did not perform an examination or ask about appellant's medical history. Later that day, appellant told his friend, Airman Butler, how to obtain the steroids from the same German physician. When Airman Butler received his prescription, they went to a German pharmacy to have both prescriptions filled. The pharmacist did not have the necessary items in stock and requested that appellant and Airman Butler return later in the day. That afternoon, appellant picked up both of the filled prescriptions and took them onto Hahn Air Base.

Upon returning to the base, appellant went to the gym to lift weights. Airman F, another bodybuilder, told appellant he was going to Sergeant W's room in the dormitory to inject his steroids. Appellant decided to join him. As they were going up to Sergeant W's room, appellant asked Sergeant W to carry the cooler containing the steroids. Sergeant W refused, telling appellant that she did not want her fingerprints on it. In the room, Airman F injected himself and appellant with steroids. Appellant then went to Airman Butler's dormitory room to bring Airman Butler to Sergeant W's room. There, appellant injected Airman Butler with anabolic steroids. Once the injections were completed, appellant, Airman F, and Airman Butler discussed what they should do with the used syringes and the remaining drugs. They decided that, if they put the used injectables in Sergeant W's trash can, they could be guilty of illegal distribution of paraphernalia. Appellant and Airman Butler decided to let Airman F take all of the remaining steroids to his off-base apartment because they feared the steroids would be confiscated during a dormitory inspection of their rooms. Appellant also feared that if his room were inspected, the karate tournament officials would find out and disqualify him from participation.

Approximately 5 days later, appellant and Airman Butler retrieved some of the steroids from Airman F's apartment. Before they could use them, Airman Butler noticed a sign on the wall of the Nautilus equipment room in the base gym which explained the consequences of using anabolic steroids. Appellant normally worked out in the free weight room, but did use the Nautilus room once a week. Appellant claims not to have seen the sign before Airman Butler brought it to his attention. According to appellant and Airman Butler, this sign caused them to discontinue use of the steroids. Appellant dropped the steroids into a trash can on the side of a German road. Two weeks later appellant claims they returned to Airman F's apartment to pick up the remaining steroids, which they put in an off-base trash can. When AFOSI agents searched Airman F's apartment, however, they found steroids which appellant conceded were his.

Sometime between the middle and end of July 1991, appellant went to the base hospital and asked Airman First Class H what the requirements were for an active duty military member to use a local German physician. She told him that unless he was referred by a military physician he would have to pay and it might also affect his Personal Reliability Program status. About the same time, appellant talked with a chaplain, Major M. Appellant told Major M that he had just seen a sign in the gym which indicated that use of steroids was prohibited in the Air Force, that he had been using steroids prescribed by a German physician, and he was concerned that he may have been in violation of the proscription. Appellant asked Major M what would happen if he went to Social Actions regarding his use of the steroids. After telephoning the base Social Actions office, Major M told appellant that if he reported his use of steroids to Social Actions, they would have to report it to command.[2]

---

2. The defense has not suggested, and there is no

evidence to support a conclusion, that appellant's

At trial, appellant produced a document, in German, which he claimed was a receipt the Germany physician gave him on 16 September 1991 documenting his prescribing anabolic steroids for appellant in July 1991. The document was admitted into evidence and presented to the court members without translation.

## II. Legal Sufficiency

■ Appellant alleges that the findings of guilty are legally insufficient because the court members incorrectly applied the law applicable to the valid prescription defense. He avers that by convicting him of wrongfully possessing anabolic steroids, while acquitting him of use and introduction of steroids onto a military installation, the court members must have believed that appellant thought his prescription was legitimate until he saw the sign on the gym wall prohibiting steroid use. Thus, for the court members to come to such inconsistent conclusions, the military judge's instructions must have been inadequate. The law on inconsistent verdicts is independent of the law of adequate instructions. We will discuss the instructions in § III, *infra.*

■ We are not convinced that the findings of the court are inconsistent. But, even assuming they were inconsistent, no relief is warranted. "Consistency in the verdict is not necessary." *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." *Id.,* 284 U.S. at 394, 52 S.Ct. at 191. "The reason for the rule is that the court-martial may merely have given the accused a break." *United States v. Lyon,* 15 U.S.C.M.A. 307, 35 C.M.R. 279, 285 (1965); *accord United States v. Watson,* 31 M.J. 49, 53 (C.M.A.1990). Instead, the appropriate action is to review the court's finding to "determine whether it may legally stand."

offenses were discovered because of his discussions with the chaplain or the chaplain's discussion with Social Actions personnel. Although no evidence on the issue was presented, it appears that at the time appellant spoke to the chaplain, he was already under investigation by the JDET.

*United States v. Snipes,* 18 M.J. 172, 175 (C.M.A.1984).

■ This Court may affirm only such findings as we find are correct in law and fact. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987), (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

The elements of the offense of wrongful possession of anabolic steroids are: (1) That the accused possessed a certain amount of a controlled substance; and (2) that the possession by the accused was wrongful. MCM, Part IV, ¶ 37b(1). The term "controlled substance" includes within its definition "any substance which is included in Schedules I through V established by the controlled Substances Act of 1970 (21 U.S.C. 812)." MCM, Part IV, ¶ 37c(1). Anabolic steroids are a Schedule III controlled substance. 21 U.S.C. § 812 (1990). The prosecution and defense agree that the evidence established that the accused knowingly possessed anabolic steroids and anabolic steroids are Schedule III controlled substances. The dispute concerns whether appellant's possession was wrongful.

■ The possession of controlled substances is wrongful if it is knowing and without legal justification or authorization. *See United States v. Harper,* 22 M.J. 157, 162 (C.M.A.1986); MCM, Part IV, ¶ 37c(5). In the absence of credible evidence to the contrary, the wrongfulness of the possession of controlled substances may be inferred. *United States v. Ford,* 23 M.J. 331, 332 (C.M.A.1987); *United States v. Crawford,* 6 U.S.C.M.A. 517, 20 C.M.R. 233 (1955). The prosecution may not rely on this inference if the controlled substance was prescribed by a physician. *United States v. Moore,* 24

Under such circumstances, appellant would not have been entitled to entry into the drug self-identification program. Air Force Regulation 30–2, *Social Actions Program,* ¶ 4–2a(1)(a)2 (1986).

C.M.R. 647, 650 (A.F.B.R.1957). The Court of Military Appeals has said in dicta, "[A person] who possesses a drug pursuant to a valid prescription, ..., is of course relieved of criminal responsibility." *United States v. Lancaster,* 36 M.J. 1115, 1118 (A.F.C.M.R. 1993), (citing *United States v. West,* 15 U.S.C.M.A. 3, 6, 34 C.M.R. 449, 452 (1964) quoting *United States v. Greenwood,* 6 U.S.C.M.A. 209, 213, 19 C.M.R. 335, 339 (1955)).

█ Since appellant knew the substances he possessed were anabolic steroids, his ignorance that possession of such substances was illegal until he saw the sign on the gym wall is immaterial. Ignorance of the law is no defense. *United States v. Mance,* 26 M.J. 244, 254 (C.M.A.1988), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988) (citing *Greenwood,* 19 C.M.R. at 340.)

From the record of trial it is clear appellant knew he could not obtain steroids without a prescription. He went to a German physician to obtain the steroids because he knew military physicians would not prescribe them to him for nonmedical purposes such as bodybuilding. He admitted that the German physician neither conducted a physical examination nor sought a medical history which would indicate or contraindicate the use of such controlled substances. We find that the prescription appellant obtained for steroids was not for a valid medical purpose, and appellant knew it. Furthermore, appellant's actions after he received the steroids were incompatible with a belief that the prescription was valid. A person with a valid medical prescription does not hide his drugs off base to prevent their seizure during inspections. We are convinced a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt.

### III. Instructions on Legitimacy of the Prescription

At trial, appellant requested two instructions: One on innocent possession, and the other on the defense of agency. Appellant asserted that all the anabolic steroids he possessed were lawfully prescribed by a physician, and his possession of the anabolic steroids prescribed for Airman Butler was done lawfully on Airman Butler's behalf.

Thus, his possession of the drugs was not wrongful. The military judge gave, *inter alia,* the following instructions:

To be punishable under Article 112a, possession of a controlled substance must be wrongful. Possession of a controlled substance is wrongful if it is without legal justification or authorization.... [P]ossession of a controlled substance is not wrongful ... if it is done pursuant to legitimate medical purposes.

Possession of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required.

The military judge explained to the court members that he had taken judicial notice that anabolic steroids are Schedule III controlled substances the possession of which is not wrongful if done pursuant to legitimate medical practice. He further instructed:

Now you are further advised that the ... possession of anabolic steroids is innocent and, thus, not punishable under Article 112a of the Uniform Code of Military Justice if the steroids were duly prescribed by a physician and if the prescription was not obtained by fraud.

"Duly prescribed" means no more than prescribed by a physician for legitimate medical purposes.

In defining the term "legitimate medical purposes" or in your deciding whether-the question of legitimate purposes, you may consider any or all of the following:

one, whether the use of a particular drug is widely reported and is generally accepted as within reasonable standards of medical practice, and whether the use is for therapeutic effects; two, whether the prescribing of a particular drug comports with the principles of good medical practice and the welfare of the patient; three, whether the drug is prescribed after an appropriate patient medical examination, assessment, and a treatment plan was made and documented.

You are further advised that-this is another factor that you should consider in making this determination: that providing-you are advised that providing a prescription of anabolic steroids for an otherwise

healthy Air Force member or their use by said member for the sole purpose of enhancing muscle mass or physical strength is prohibited by Air Force Regulation 160–12, paragraph 28(k), dated 6 May 1988.

Now, you are further advised that if a person obtains a prescription by fraud, it is not a valid defense that the physician administered it for what he believed was a legitimate medical purpose. Similarly, a person cannot evade criminal responsibility if he consciously used anabolic steroids knowing that they were not prescribed for legitimate medical reasons.

Now, the court is further advised that if you determine that the accused and Airman Butler were given prescriptions, then you must determine if such prescriptions were duly prescribed, in light of other evidence raised, that they may have been obtained either through fraud or, secondly, that such prescriptions were not prescribed for a legitimate-for legitimate medical purposes and that the accused was aware of this. If the court determines beyond a reasonable doubt that the accused and Airman Butler in fact obtained prescriptions through fraud, or that such prescriptions were not issued for legitimate medical purposes and the accused was aware of this, then the fact that the accused or Airman Butler may have had prescriptions is not a valid defense to use, possession or introduction onto a military installation with intent to distribute.

On appeal, appellant objects to these instructions.

THE MILITARY JUDGE ERRED BY INSTRUCTING THE COURT MEMBERS THAT, IN DETERMINING THE LEGITIMACY OF THE APPELLANT'S PRESCRIPTION, THEY SHOULD FIRST DETERMINE, IN THE ABSTRACT, WHETHER THE PRESCRIBING OF ANABOLIC STEROIDS FOR BODYBUILDING PURPOSES WAS AN ILLEGITIMATE MEDICAL PRACTICE; AND SECONDLY WHETHER THE APPELLANT HAD KNOWLEDGE OF SUCH ILLEGITIMACY, ESPECIALLY WHEN THE ONLY EVIDENCE ON THE ISSUE RELATED TO QUALITY OF CARE CONCERNS AND NOT WHETHER SUCH PRESCRIBING WAS LEGAL.

He contends that a legitimate medical purpose is "any purpose for which a drug may be prescribed legally," and that to hold an accused criminally liable, the act of prescribing the steroids must have been illegal as well. Appellant insists that because prescribing steroids for bodybuilding is not illegal in Germany, his conviction can not stand. We disagree.

The defense relies upon the testimony of a government witness, Major Nolte, a military physician who was qualified as an expert in anabolic steroids, their indications and effects. Major Nolte testified that anabolic steroids were controlled substances, but that did not prevent physicians from prescribing them for patients. Military physicians may prescribe anabolic steroids when medically indicated. Major Nolte stated that it would be inappropriate for an Air Force physician to prescribe anabolic steroids for bodybuilding-the practice is prohibited by Air Force Regulation 160–12, *Professional Policies and Procedure* (1988), because there are no medical indications for such use. Based on his discussions with German physicians, Major Nolte testified that prescribing anabolic steroids for bodybuilding was not good medical practice in Germany either, although some physicians did it anyway. Major Nolte examined appellant's medical records but could find no medical condition for which the use of anabolic steroids was necessary.

■ The military judge has substantial discretion in deciding what instructions to give. *United States v. Damatta–Olivera*, 37 M.J. 474, 478 (C.M.A.1993). Normally, the failure to object to an instruction of an *omission* in an instruction before the members close to deliberate constitutes waiver of the objection absent plain error. R.C.M. 920(f); *see United States v. Smith*, 34 M.J. 200, 203 (C.M.A.1992); *United States v. Guron*, 37 M.J. 942, 950 (A.F.C.M.R.1993).

■ As the military judge recognized, the fact that a prescription was issued by a licensed physician does not make it valid. A prescription obtained by fraud or knowingly

obtained for other than a legitimate medical purpose is not valid. *Moore,* 24 C.M.R. at 650. We find no error in the military judge's instructions. Before the court members could find appellant's possession of the anabolic steroids was wrongful, they had to be convinced beyond a reasonable doubt that the prescription was obtained by fraud or knowingly obtained for other than a legitimate medical purpose. We note the trial defense counsel discussed these instructions at length with the military judge and with one exception,[3] accepted them without objection. Trial defense counsel's affirmative agreement with the instruction gives appellant no basis to argue plain error. *See United States v. Strachan,* 35 M.J. 362, 364 (C.M.A.1992).

## IV. Military Judge's Denial of Post-trial Hearing

After the court president announced the findings, the trial defense counsel told the military judge that the findings were inconsistent. He asked the military judge to inquire into the court members' understanding of the prescription defense instruction. The military judge refused. A few minutes later, the defense counsel requested the military judge hold a post-trial session. At this post-trial session, the military judge was asked to instruct the members that having a prescription is a complete defense to the offense charge and ask them if they wanted to reconsider their findings. The military judge denied the request. On appeal, appellant asserts the military judge erred.

■ "Findings which are proper on their face may be impeached only when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member." R.C.M. 923; *United States v. Bishop,* 11 M.J. 7 (C.M.A.1981); *United States v. West,* 23 U.S.C.M.A. 77, 48 C.M.R. 548 (1974). The Military Rules of Evidence

similarly prohibit inquiry into the deliberative process of the court members. Mil. R.Evid. 606(b); *United States v. Motsinger,* 34 M.J. 255 (C.M.A.1992); *United States v. Heimer,* 34 M.J. 541 (A.F.C.M.R.1991). An inquiry into how the court members used the judge's instructions violates both R.C.M. 923 and Mil.R.Evid. 606(b). The military judge did not err by refusing to hold such a hearing.

## V. Sentence Appropriateness

■ Citing the case of another member of his squadron, appellant claims that his sentence is inappropriately severe in that it extends to a bad-conduct discharge. Sergeant Christoff, who testified on behalf of appellant in an attempt to discredit one of the AFOSI informants, pled guilty to wrongful use of steroids and attempted possession of steroids in a separate court-martial. He was sentenced to confinement for 115 days, forfeiture of $250 pay per month for 4 months, and reduction to E–2.

■ This Court may examine disparate sentences when: (1) There is a direct correlation between each of the accused and their respective offenses; (2) the sentences are highly disparate; and (3) there are no good and cogent reasons for the differences in punishment. *United States v. Thorn,* 36 M.J. 955, 959 (A.F.C.M.R.1993) (citing *United States v. Kent,* 9 M.J. 836, 838–39 (A.F.C.M.R.1980)). We fail to see any direct correlation between the cases or to find that the sentences are highly disparate. Furthermore, there may have been good reason to treat such offenders differently. Sergeant Christoff pled guilty and may have reaped some mitigating benefit therefrom. Appellant, on the other hand, had a less than sterling record and was not entitled to the benefit of guilty-plea mitigation instruction. His only performance report reflected substandard duty performance, and he had received nonjudicial punishment because of his continuing failure to go to his appointed place of duty at the times specified.

---

3. Appellant did object to including in the instructions any reference to Air Force regulations governing the prescribing of anabolic steroids by Air Force physicians. We believe this instruction

was appropriate in assisting the court members to decide whether the prescription was for a legitimate medical purpose.

Nevertheless, we have given individualized consideration to the appropriateness of the sentence, weighing the nature and seriousness of the offenses, the character and military performance of appellant, and all the circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982). We find the sentence is appropriate.

## VI. The Remaining Issues

 Appellant invites our attention to the military judge's denial of appellant's motion to dismiss for failure to state an offense. At trial, the sole basis for the motion was appellant's possession of a prescription for the anabolic steroids. The focus of a motion to dismiss for failure to state an offense is the specification itself, not the fact that the accused may have some defense to the charge. *See United States v. Snyder*, 428 F.2d 520, 522 (9th Cir.1970), *cert. denied*, 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970). To avoid dismissal for failing to state an offense, a specification must contain the elements of the offense intended to be charged in sufficient detail to place the accused on notice of the allegation against which he must be prepared to defend and to provide a bar against a second trial for the same offense after acquittal or conviction of the offense charged. *United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202, 206 (1953); *see United States v. Schwarz*, 15 M.J. 109, 111 (C.M.A. 1983). The specification was sufficient.

Appellant likewise invites our attention to his motion at trial for a finding of not guilty, which the military judge denied. The defense based its motion on the failure of the prosecution to present evidence to establish that appellant obtained his prescription by fraud and the lack of evidence to show that the prescribing of steroids was an illegitimate medical practice. A motion for a finding of not guilty shall only be granted if the evidence, viewed in the light most favorable to the prosecution, without evaluating the credibility of witnesses, could not reasonably tend to establish every essential element of the offense charged. R.C.M. 917(d). Furthermore, this Court will not normally set aside a conviction because the military judge erred in failing to grant a motion for a

finding of not guilty unless, after looking at all of the evidence presented before findings, we are not convinced the evidence is sufficient to sustain the findings of guilty. R.C.M. 917(g). In this case, the evidence was sufficient for the military judge to deny the motion.

## VII. Conclusion

We are convinced the findings and sentence are correct in fact and law and no error prejudicial to appellant's substantial rights was committed. Articles 59(a), 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are

**AFFIRMED.**

Senior Judge RAICHLE and Judge PEARSON concur.