UNITED STATES

v.

Sergeant Kenneth E. TAYLOR, FR232–15–0043 United States Air Force.

ACM 30599.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 12 Feb. 1993.

Decided 11 Jan. 1995.

Appellate Counsel for Appellant: John A. Wickham (argued), Colonel Jay L. Cohen, and Major Gilbert J. Andia, Jr.

Appellate Counsel for the United States: Captain Jane L. Harless (argued), Colonel Jeffery T. Infelise, and Colonel Thomas E. Schlegel.

Before DIXON, YOUNG, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Judge:

Court members convicted appellant of premeditated murder, burglary, and larceny (Article 118, 129, and 121, UCMJ, 10 U.S.C. §§ 918, 929, 921 (1988)), and sentenced him to a dishonorable discharge, confinement for life, total forfeitures, and reduction to E–1. Appellant assigns four errors: (1) the military judge's instruction on the use of prior consistent and inconsistent statements was prejudicial error; (2) the president of the court was incompetent and unfit because he was later convicted of several offenses; (3) the military judge failed to ask court members during voir dire if any of them would automatically impose the death sentence; and (4) the military judge's cumulative errors during sentencing and failure to direct a mistrial prejudiced appellant. Finding no error, we affirm.

## I. Prior Consistent and Inconsistent Statements

Over defense objection, the military judge gave the following instruction concerning the use the court members could make of prior statements made by two of the witnesses against appellant:

> You have heard evidence that the witnesses, Mr. Michael Basso and Sergeant Eric V. Rowden made statements prior to trial that may be inconsistent in part with their testimony at trial. If you believe that inconsistent statements were made, you may consider the inconsistencies in evaluating the believability of the testimony of these witnesses. *You may not, however, consider the prior statements as evidence of the truth of the matters contained in those portions of the prior statements.* On the other hand, you have also heard evidence that those witnesses may have made statements prior to trial that may be consistent with their testimony at this trial. *·You may consider prior consistent statements, if any, as evidence of the truth of the matters expressed therein.*

(emphasis added). At trial, the defense claimed the court members should be able to use the prior inconsistent statements as evidence of the truth of the matters contained therein. On appeal, appellant has raised an additional objection to the instruction—the court members should not have been permitted to consider the prior consistent statements as evidence of the truth of the matters expressed therein.

■ The military judge has substantial discretion in deciding what instruction to give. *United States v. Damatta–Olivera*, 37 M.J. 474, 478 (C.M.A.1993) (citing *United States v. Smith*, 34 M.J. 200 (C.M.A.1992); R.C.M. 920(c) Discussion).

The test to determine if denial of a requested instruction constitutes error is whether (1) the charge is correct; (2) "it is not substantially covered in the main charge"; and (3) "it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation."
*Damatta–Olivera*, 37 M.J. at 478 (quoting *United States v. Winborn*, 14 U.S.C.M.A. 277, 282, 34 C.M.R. 57, 62 (1963)). We review the military judge's refusal to give a defense-requested instruction for an abuse of discretion. *Damatta–Olivera*, 37 M.J. at 478.

■ Unless authorized as an exception by the Military Rules of Evidence or applicable statute, hearsay is inadmissible. Mil.R.Evid. 802. Hearsay is oral or written statements made by a witness prior to trial, offered into evidence to prove the truth of the matter asserted. Mil.R.Evid. 801. By definition, the following statements are not hearsay, and therefore are admissible for the truth of the matters contained therein:

(1) Prior Statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person; or

(2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement in either the party's individual or representative capacity, or (B) a statement of which the party has manifested the party's adoption of belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment of the agent or servant, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

Mil.R.Evid. 801(d).

■ We can find no support for appellant's contention that the prior inconsistent statements could be used as substantive evidence. Under Mil.R.Evid. 801(d)(1)(A), to be substantively admissible, the statements must have been made in a formal proceeding, not a police interrogation. *See United States v. Luke*, 13 M.J. 958 (A.F.C.M.R.1982); *United States v. Powell*, 17 M.J. 975 (A.C.M.R. 1984); S. Saltzburg, L. Schinasi & D. Schlueter, *Military Rules of Evidence Manual* 761 (3d ed. 1991). To be admissible substantively under Mil.R.Evid. 801(d)(2), the statements must have been the admission of a party-opponent or his agent. Neither witness was a party-opponent, the prior statements were not adopted by the government, and the defense made no effort to show that either witness was a co-conspirator. Thus, the prior inconsistent statements are hearsay and not admissible to prove the truth of the matter asserted unless they fit within one of the hearsay exceptions in Mil. R.Evid. 803 or 804. We have been unable to find any exception which would permit consideration of this evidence substantively.

■ The defense did not object to the military judge's instruction that prior consistent statements may be considered as substantive evidence. The failure to object to an instruction or an omission in an instruction before the members close to deliberate constitutes waiver of the objection absent plain error. *See* R.C.M. 920(f); *Smith*, 34 M.J. at 203; *United States v. Commander*, 39 M.J. 972, 978 (A.F.C.M.R.1994). We find the military judge's instruction was a correct statement of the law.

## II. Competence of Court Member

Appellant's trial began on 2 February and ended on 12 February 1993. On 21 October 1993, the president of appellant's court-martial, Colonel L, pled guilty to committing indecent acts and sodomy with three teenage boys and a staff sergeant between August 1988 and October 1992. The military judge

sentenced the president to a dismissal and confinement for 7 years. Appellant claims he was denied a fair and impartial trial because the president was per se incompetent to sit on the court-martial and he willfully concealed his criminal conduct. Appellant asks us to set aside his conviction.

■ We have been unable to find any military case law directly on point. The military cases in this area deal with the failure of a court member to answer voir dire questions honestly. *See United States v. Mack*, 41 M.J. 51 (C.M.A.1994). In *Mack*, the military judge asked if any court member had been the victim of a physical assault. Colonel Schnapp failed to disclose that 30 years earlier a robber had pointed a weapon at him, threatened to kill him, and then tied him up. The defense was unaware that, at an earlier trial, Colonel Schnapp had admitted during voir dire that he had been so assaulted. Colonel Schnapp had conceded that he had been traumatized by the event. The Court of Appeals adopted the Supreme Court's holding in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) to resolve the issue. To prevail, an accused must demonstrate that the juror failed to answer honestly a material question on voir dire and that a correct response would have provided a valid basis for a challenge for cause. *Mack*, 41 M.J. at 55.

■ After carefully reviewing the record of trial, the following questions are the only ones Colonel L arguably could have failed to answer honestly: (1) "Is any member of the court aware of any other matter which the member believes may be grounds for challenge by either side against him? Negative response;" (2) "[D]o all of you have the frame of mind that you would want court members to have if the roles were reversed and you were accused of committing a crime. Are all of you in that impartial mindset? Affirmative response from all members." The defense has failed to demonstrate that Colonel L failed to answer any question honestly or that his being on the court somehow prejudiced appellant.

In a case similar to the one before us now, the Ninth Circuit Court of Appeals applied *McDonough Power Equipment, Inc. United States v. Aguon*, 851 F.2d 1158 (9th Cir.1988) (en banc). In that case, Aguon claimed she was not tried by an impartial juror, San Nicholas, because he later pled guilty to a charge similar to a charge of which she was convicted—taking kickbacks in connection with the letting of paving contracts. The Ninth Circuit refused to grant *Aguon* a new trial:

> There is no evidence of prejudice against [the accused]. There is no showing that San Nicholas failed to answer honestly a material question. There is no evidence that at the time he was impaneled he knew he was under investigation, nor is there evidence of either his actual prejudice against [the accused] or words or actions that would show he might be prejudiced.

*Aguon*, 851 F.2d at 1170.

We find the *Aguon* analysis persuasive. In the absence of false answers to material questions, or a showing of other prejudice from Colonel L's presence on the court panel, we will deny appellant relief. We fail to see how appellant was prejudiced by Colonel L being a member of the court panel.

### III. Voir Dire

■ Citing *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), appellant asserts the military judge's failure to ask the court members if they would automatically adjudge a death sentence violated appellant's due process rights. Since the court members did not adjudge a sentence which included death, the issue is moot. Furthermore, we do not believe *Morgan* supports appellant's claim. In Illinois, the trial court conducts voir dire rather than permitting the attorneys to do so. The trial judge, at the prosecution's request, asked the members of the venire if they would automatically vote against the death penalty, but refused the defense request to ask if any juror would automatically vote to impose the death penalty regardless of the facts. *Morgan*, 504 U.S. at ——, 112 S.Ct. at 2226. The Supreme Court held that the trial judge's refusal to ask the question was error. In this case, appellant, through his counsel, had adequate opportunity to voir dire the members and to

ask the question if he so desired. The military judge did not err.

## IV. Errors in Sentencing Proceedings

Appellant alleges that the military judge's cumulative errors during the sentencing proceeding prejudiced his right to due process: specifically, the military judge admitted inadmissible victim impact evidence, the trial counsel was permitted to comment on appellant's assertion of his constitutional rights, and the military judge had a *sua sponte* duty to set aside the findings of guilty based on the sentencing evidence that appellant suffered from brain damage.

### A. Victim's Air Force Photograph

■ Before findings, the prosecution presented evidence, including photographs, concerning the condition of the victim's body when found after the shooting. During the sentencing proceeding, the prosecution attempted to bring to life the bloated, bloody image on the photos by introducing the victim's basic Air Force Training photo and the testimony of his sister and brother. The sister and brother testified about the victim, his background, and what his death meant to them. We review the military judge's decision to admit evidence during the sentencing hearing for a clear abuse of discretion. *United States v. Zakaria*, 38 M.J. 280, 283 (C.M.A.1993) (citing *United States v. Redmond*, 21 M.J. 319, 326 (C.M.A.), *cert. denied*, 476 U.S. 1105, 106 S.Ct. 1950, 90 L.Ed.2d 359 (1986)).

■ We find no error in the military judge's rulings. *See* R.C.M. 1004, 1001(b)(4); *United States v. Loving*, 41 M.J. 213 (1994). The prosecution

> has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and particularly to his family. *Booth v. Maryland*, 482 U.S. [496] at 517 [107 S.Ct. 2529, 2540, 96 L.Ed.2d 440 (1987) ] (White J., dissenting) (citation omitted). By turning the victim into a "faceless stranger at the pen-

alty phase of a capital trial," [*South Carolina v.*] *Gathers*, 490 U.S. [805] at 821 [109 S.Ct. 2207, 2216, 104 L.Ed.2d 876 (1989) ] (O'Connor, J., dissenting), [the Court] deprives the [prosecution] of the full moral force of its evidence and may prevent the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder.

*Payne v. Tennessee*, 501 U.S. 808, 824–25, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991).

### B. Trial Counsel's Sentencing Argument

■ During his sentencing argument, the trial counsel appears to have suggested that, in addition to the rights of the accused, the court members should consider the rights of the victim. The trial counsel's argument was inarticulate and began to sound like a comment on appellant's exercise of his rights. The vigilant military judge quickly intervened and cautioned counsel. At appellant's request, the military judge instructed the court members to disregard the trial counsel's statement. The trial counsel's subsequent argument encouraged the members to consider the rights of the victim as well as those of appellant. Under the circumstances, the military judge's instruction corrected any error in the trial counsel's argument.

### C. Defense Psychological Evidence

During the sentencing hearing, a psychologist, Dr. Philip J. Murphy, testified for the defense that he had interviewed and subjected appellant to a battery of psychological tests. He had concluded that appellant was not psychotic, neurotic, or "personality disordered. He shows no diagnosable condition within the psychiatric nomenclature.... [W]hile psychologically in good health, [appellant] probably has an anomaly in the right hemisphere of his brain." Dr. Murphy stated that the right hemisphere "encodes and permits us to appreciate and then to express emotion." The anomaly would interfere with appellant's "capacity to experience emotion in the same way that would be normal and to probably understand emotion in the same

fashion." Based on his own studies and specialized training, Dr. Murphy believed that a significant number of murders are committed by persons with right hemisphere anomalies. These individuals seem to function well in society until a trigger, "most typically alcohol ... releases the anomaly to create a probability of murder." "Basically, when you look at the specific anomaly, as any decision would involve the experience of emotion, you might expect for him to have some diminished capacity to appreciate and understand it and act, based upon the normal experience of emotion that somebody else would, without the anomaly." Dr. Murphy opined that abstaining from alcohol would be sufficient to prevent the release of the anomaly. Appellant now suggests that this evidence should have gone to the court members on the issue of his guilt, and that the military judge abused his discretion by failing to set aside the findings on his own motion. In the alternative, the defense requests we order a post-trial sanity board.

 A military judge, "may as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." R.C.M. 915(a). Mental impairment falling short of legal insanity may cast doubt on an accused's ability to form a premeditated design to kill. *See United States v. Berri*, 33 M.J. 337, 344 (C.M.A.1991) (citing *Ellis v. Jacob*, 26 M.J. 90 (C.M.A. 1988)). Voluntary intoxication may raise a reasonable doubt as to the existence of a premeditated design to kill and may reduce premeditated murder to unpremeditated murder. R.C.M. 916(*l*)(2) and *Manual for Courts–Martial, United States, 1984*, Part IV, ¶ 43c(2)(c); *United States v. Craig*, 2 U.S.C.M.A. 650, 10 C.M.R. 148 (1953).

 Dr. Murphy's testimony clearly did not raise the issue of appellant's lack of mental responsibility at the time of the killing, either as a complete defense or as it related to the specific state of mind required for the offense of murder. It was presented to avoid imposition of the death penalty, and despite the nebulous nature of the evidence, seems to have worked. During Dr. Murphy's testimony, the military judge specifically asked defense counsel if there was any question as to appellant's mental capacity. Defense counsel assured the military judge there was not and that she was not trying to relitigate appellant's guilt. The trial counsel then introduced, as an appellate exhibit, the conclusions of a pretrial inquiry into appellant's mental conditions conducted under R.C.M. 706. That inquiry concluded that appellant had been mentally responsible at the time of the offense. The military judge did not abuse his discretion as there was no reason to set aside the findings.

## V. Conclusion

The findings and sentence are correct in law and fact, and we find no errors prejudicial to appellant's substantial rights. Accordingly, the findings and sentence are

AFFIRMED.

Chief Judge DIXON and Judge BECKER concur.