# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40855**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Noah D. BOGERT**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 March 2026

————————————

*Military Judge*: Wesley A. Braun.

*Sentence*: Sentence adjudged 10 March 2025 by GCM convened at Holloman Air Force Base, New Mexico. Sentence entered by military judge on 22 April 2025: Dishonorable discharge, confinement for 42 months, and reduction to E-1.

*For Appellant*: Captain Olga Stanford, USAF.

*For Appellee*: Major Vanessa Bairos, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, RAMÍREZ, and KUBLER, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge DOUGLAS and Judge KUBLER joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RAMÍREZ, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of involuntary manslaughter in violation of Article 119, Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 919.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 42 months, and reduction to the grade of E-1. The convening authority took no action on the findings or the sentence but granted a deferment of the reduction in grade until the entry of judgment was signed by the military judge, and waiver of automatic forfeitures for a period of six months for the benefit of Appellant's spouse.

Appellant raises four issues on appeal, which we have rephrased: (1) whether the military judge abused his discretion in overruling the Defense's objection to the photographs in Prosecution Exhibit 3;[2] (2) whether the military judge abused his discretion in admitting certain aggravation testimony; (3) whether the military judge plainly erred in allowing the Government to elicit statements requesting "strong punishment" for Appellant; and (4) whether the sentence imposed by the military judge violates the law because his sentencing decision was informed by considerations of improper evidence and testimony.

As discussed below, we find no error that materially prejudiced Appellant's substantial rights concerning issues (1)–(3). To review issue (4), we are required to find in Appellant's favor as to at least one other raised issue. However, because we find no error as to any of the first three issues, we are not required to separately address issue (4).

Nonetheless, we have carefully considered both assertions made by Appellant in issue (4). First, we considered whether the sentence violates the law under Article 66(e)(1)(A), UCMJ, 10 U.S.C. § 866(e)(1)(A). Second, we considered whether the sentence is "plainly unreasonable" under Article 66(e)(1)(D), UCMJ, 10 U.S.C. § 866(e)(1)(D). After finding no error that materially prejudiced Appellant's substantial rights concerning issues (1)–(3) and reviewing the entire record we find issue (4) warrants neither discussion nor relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)).

We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant entered the Air Force in 2021, and at the time of his offense, Appellant was stationed at Holloman Air Force Base (AFB), New Mexico. BA

---

[1] Unless otherwise noted, all references to the UCMJ, the Rules for Courts-Martial and the Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2024 ed.).

[2] The exhibit is a series of 24 photographs that reflect the life of the victim in this case.

was also stationed at Holloman AFB, and they were both assigned to the security forces squadron. The two had met at their technical school and became friends.

On 11 February 2024, Appellant and his wife drove from their home in New Mexico to El Paso, Texas, to pick up BA at the airport, as BA had been on leave visiting his family. After stopping at a sporting goods store for BA to buy a new stock for one of his firearms, they went to Appellant's house. Appellant kept two of his own firearms at his house. He had an AR-15 "style" rifle[3] and a handgun. Appellant had last shot the rifle on or about 27 January 2024. While at Appellant's house, Appellant took the rifle out and BA removed the stock to see if the new stock that he had just purchased would fit on Appellant's gun.

When BA gave the AR-15 back to Appellant, Appellant pulled the rifle's charging handle, but he did not properly clear the rifle. Instead, Appellant only partially pulled it back and was not able to visually inspect the chamber to ascertain whether a bullet was in the chamber. If Appellant had properly cleared the rifle and properly visually inspected the chamber, he would have identified and removed the round in the chamber.

After he took the AR-15 from BA, Appellant walked to his bedroom at the back of the house, attached a loaded 9mm handgun to his belt, and decided he would "clear" his house. This simulates a training exercise he performed as part of his security forces training.

While incorrectly believing the AR-15 was unloaded, he held the loaded AR-15 in his hand and kept his loaded handgun strapped to his belt. Appellant then exited his bedroom and began clearing the house. He started by taking the door wide to look for "threats." Appellant then saw BA standing near the dining room table. He was approximately six feet from Appellant. Appellant swiveled towards BA, said "contact front," switched the AR-15 from safety to the "fire" position and pulled the trigger. A single round fired, and Appellant killed BA.

## II. DISCUSSION

### A. Admission of Photographs as Aggravation Evidence

#### 1. Additional Background

During the presentencing phase of Appellant's court-martial, the Prosecution moved to admit Prosecution Exhibit 3 (PE 3), a series of 24 photographs

---

[3] An AR-15 "style" rifle refers to rifles that look like, operate like, or are patterned after the AR-15 design, but are not necessarily the exact same model or brand. We will simply refer to the weapon as an AR-15.

that reflect the life of the victim BA. BA's mother laid the foundation for the photos, but each family member discussed them during their testimony. These photographs show BA as a baby, a child growing up, on family trips, and his life in the Air Force. Various family members of BA testified about the photographs and what they meant to the family.

The Defense objected to the admission of PE 3. The basis for the objection was threefold: relevance, improper matters in aggravation under Rule for Courts-Martial (R.C.M.) 1001(b)(4), and Mil. R. Evid. 403. The Prosecution responded,

> [I]mages from a victim's life, particularly in a homicide or a manslaughter case, is appropriate victim impact. It is appropriate for this [c]ourt, in order to assess the impact of this crime on the named victim in the charge as well as the other victims of this crime, to assess what was lost.

The Prosecution continued, "These photos demonstrate the memories that the family has with [BA] and that's all that they have left of him is those memories."

When he considered Defense's objection to PE 3, the military judge relied on *United States v. Taylor*, which found no error in admitting a murder victim's Air Force basic training photograph in sentencing because "just as the [accused] should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and particularly to his family." 41 M.J. 701, 705 (A.F. Ct. Crim. App. 1995) (citing *Booth v. Maryland*, 482 U.S. 496, 517 (1987) (White, J., dissenting)).

The military judge then continued his analysis under R.C.M. 1001. He stated,

> First, the [c]ourt finds that this evidence is evidence that is directly resulting from the crimes to which the accused has been convicted. The accused has ple[a]d guilty and has been found guilty of involuntary manslaughter by culpable negligence. These photos depict the victim of the accused's crime, who is no longer with us, and adds some perspective to the person who cannot be here. The [c]ourt finds that coupled with the testimony of the [the victim's mother,] such evidence is appropriate victim evidence pursuant to [R.C.M.] 1001(b).

As it relates to the Mil. R. Evid. 403 balancing test and the potential for prejudice based on cumulativeness, the military judge began his analysis by stating that he "has to look at the balancing test under [Mil. R. Evid.] 403 as sentencing evidence is subject to the limitations of said balancing test." In looking at the probative value, the military judge "[found] that there is probative

value to the evidence being offered by the [G]overnment" because it "helps illustrate the testimony of the witness on the stand, the mother of the victim. It also helps the [c]ourt better appreciate the victim of the crime." While the military judge did have some concern that the nature of the evidence may be cumulative, he "note[d] that there is more than one picture -- 24 photos, more than a picture of the age of the victim," and stated, "I don't know if that in and of itself is problematic, but it is a consideration of the [c]ourt." The military judge also considered "whether such evidence is likely to inflame the passions of the sentencing authority, a common concern in cases of this type, especially when dealing with pictures of victims." However, "in reviewing thoroughly the individual photos contained in [PE] 3 for identification," the military judge found "that while there is some prejudicial effect," he was not convinced that the prejudicial effect substantially outweighed the probative value of this evidence. Further, "[a]t a minimum," the military judge did not feel "that this is a question of admissibility, but perhaps a question of weight," and concluded that "[c]ounsel are always welcome to, and often do, argue weight that the [c]ourt should give particular pieces of evidence, and this case is no different."

The military judge concluded by explaining:

> The [R]ules of [E]vidence, obviously, are written to encourage the admission of relevant evidence. The [c]ourt finds this as relevant. The [c]ourt finds that its probative value is not substantially outweighed by a danger of unfair prejudice; and as such, is going to admit the -- is going to admit [PE] 3 for identification as [PE] 3 over the objection of the [D]efense.
>
> In doing so, the [c]ourt is confident that in determining a sentence, the [c]ourt can give [PE] 3 the weight that it deserves in determining what sentence is appropriate under the circumstances. So with that, [PE] 3 is admitted.

The Prosecution then asked questions of BA's family, which included his mother, his father, and his two sisters. These questions directly related to the photographs and how they were tied to BA's life and their mourning of his life. The testimony and the photographs included BA as a baby; BA with family on family vacations; and BA celebrating with family after he graduated from his basic military training; his friendship with others at Holloman AFB; he and his family the day he returned from military deployment; and also the last picture that he and his siblings took together before Appellant unlawfully killed him.

### 2. Law

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018).

"A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record; (2) the military judge uses incorrect legal principles; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge fails to consider important facts." *United States v. Rudometkin*, 82 M.J. 396, 401 (C.A.A.F. 2022) (citations omitted).

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)). "The standard requires that the military judge be clearly wrong in his determination of the facts or that his decision be influenced by an erroneous view of the law." *United States v. Dooley*, 61 M.J. 258, 262 (C.A.A.F. 2005) (footnote omitted). "When testing for an abuse of discretion, [a reviewing court] does not substitute its judgment for the military judge's." *United States v. Grant*, 38 M.J. 684, 688 (A.F.C.M.R. 1993).

The purpose of the Rules at the presentencing phase is "to aid the court-martial in determining an appropriate sentence." R.C.M. 1001(a)(1). Additionally, the Prosecution may present matters in aggravation. R.C.M. 1001(b)(4). The matters in aggravation include evidence "directly relating to or resulting from the offenses of which the accused has been found guilty." *Id.* It also includes evidence of social and psychological impact on any victim of an offense committed by the accused. *Id.* Victim impact statements may be admitted as aggravation evidence under R.C.M. 1001(b)(4). *Barker*, 77 M.J. at 382.

Finally, R.C.M. 1001(b)(4) evidence must also pass the Mil. R. Evid. 403 balancing test, "which requires balancing between the probative value of any evidence against its likely prejudicial impact." *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007) (citation omitted). If the probative value of the evidence at issue is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence," the military judge may exclude the evidence. Mil. R. Evid. 403. "Where a military judge properly conducts the balancing test under [Mil. R. Evid.] 403, we will not overturn [his] decision unless there is a clear abuse of discretion." *United States v. Ruiz*, 86 M.J. 75, 81 (C.A.A.F. 2025) (internal quotation marks and citations omitted).

### 3. Analysis

"Victims of a murder are not faceless individuals." *United States v. Curtis*, 44 M.J. 106, 140 (C.A.A.F. 1996). Nonetheless, Appellant argues that in allowing the 24 photographs at various stages of BA's life into evidence, "the military

judge relied on a case [*Taylor*] that never contemplated either the number or the nature of photographs that the Government sought to introduce here."

While Appellant is correct in that *Taylor* did not specifically consider 24 photographs in its analysis, it did not limit a sentencing authority to considering only one photo during the presentencing phase of the court-martial. In *Taylor*, this court explained that "[d]uring the sentencing proceeding, the prosecution attempted to bring to life the bloated, bloody image on the photos by introducing the victim's basic Air Force Training photo and the testimony of his sister and brother." 41 M.J. at 705. Additionally, this court pointed out that "[t]he sister and brother testified about the victim, his background, and what his death meant to them." *Id.* Similarly, *Curtis* allowed a wedding photo of the homicide victim during the presentencing phase after allowing three photos of the dead victim, without stating how many non-death photos would be appropriate. 44 M.J. at 140.

Here, we cannot find that the military judge abused his discretion in allowing 24 photographs of BA. Each photo, whether concerning family vacations, military graduations, or deployments, related to the social and psychological impact on the victims, the family members, which is specifically allowed by R.C.M. 1001(b)(4). Each witness testified to the memories that the photographs evoked and how they suffered direct emotional harm as a result of the manslaughter. When these family members testified to the direct harm they suffered as victims these photos aided them in their testimony to the court.

Additionally, R.C.M. 1001 does not limit the amount of evidence, in the form of exhibits, which the Prosecution may offer during the presentencing phase of the court-martial. We are cognizant that a military judge should limit cumulative evidence under Mil R. Evid. 403, but that was not necessary here. The military judge also recognized this as reflected in his ruling. To that point, each photo served a different purpose. The photos showed BA in different stages of his life and conjured different memories and pain for his family.

The military judge's findings were supported by the evidence; he relied on correct legal principles and applied them correctly, and did not fail to consider important facts. *Rudometkin*, 82 M.J. at 401. Additionally, we do not disturb the military judge's decision on the Mil. R. Evid. 403 balancing test, especially where the military judge places his reasoning on the record as he did here. *See United States v. Carter*, 74 M.J. 204, 206–07 (C.A.A.F. 2015). Appellant argues that "the photographs had an undue tendency to suggest a decision on the improper basis of emotion." However, emotion alone is not sufficient to exclude relevant evidence under Mil. R. Evid. 403. The probative value of the evidence must be substantially outweighed by a danger that emotion would result in unfair prejudice. Here, each photograph was put in its proper context and the military judge explained that he was "confident that in determining a sentence,

[he could] give PE 3 the weight that it deserves in determining what sentence is appropriate under the circumstances." As such, the probative value of the photos was not substantially outweighed by a danger of unfair prejudice, confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Put simply, the military judge did not abuse his discretion. *See Barker*, 77 M.J. at 383.

## B. Admission of Family Testimony Regarding Photographs

### 1. Additional Background

As explained above, PE 3 was a collection of 24 photographs of BA before Appellant unlawfully killed him. The Prosecution did not prepare the photos. Instead, BA's mother chose and collected the photos and provided them to the Prosecution. Once the military judge admitted the photographs as PE 3, he allowed BA's family to testify about the meaning and significance of the photos and how they personally affected them.

Again, the testimony included BA as a baby, family vacations, celebrating after he graduated from his basic military training, his friendship with others at Holloman AFB, he and his family the day he returned from military deployment, and the last picture that he and his siblings were together before he was unlawfully killed.

According to Appellant, the military judge abused his discretion by allowing what Appellant refers to as "family lore" about the victim because the testimonies were impermissible under R.C.M. 1001.

### 2. Law

We rely on the law from the issue explained above concerning the abuse of discretion standard and the general rules concerning aggravation evidence under R.C.M. 1001(b)(4) and will not repeat that law here.

Evidence in aggravation "includes, but is not limited to, evidence of financial, social, psychological, or medical impact on . . . any person or entity who was the victim of an offense committed by the accused . . . ." R.C.M. 1001(b)(4).

### 3. Analysis

The parties do not agree as to the standard for reviewing this issue. Appellant argues that it should be an abuse of discretion. The Government counters that the standard should be plain error because there was no specific objection to the testimony associated with the photos. Appellant points to the intertwining of the issues as a sufficient objection. Specifically, Appellant points to the military judge, "find[ing] that coupled with the testimony of the witness [the photographic] evidence is appropriate victim evidence pursuant to [R.C.M] 1001(b)."

While the Government is correct that Appellant did not specifically object to testimony associated with the photos, he did object to the photos themselves. Therefore, we will treat this issue as one subject to the abuse of discretion standard.

According to Appellant, the military judge abused his discretion by allowing what Appellant refers to as "family lore" about the victim[4] because the testimony was impermissible under R.C.M. 1001. Appellant argues that this testimony led "to a sentencing decision tainted by inadmissible information." Appellant also claims that the testimony at issue violates our superior court's holding in *United States v. Edwards*, 82 M.J. 239 (C.A.A.F. 2022), in that while the Government may offer victim impact statements in aggravation, "nothing in *Edwards* suggests the Government may introduce statements that do not meet the requirements of R.C.M. 1001(b)(4) or R.C.M. 1001(c)(2)(B)." We disagree.

The testimony associated with the photos in PE 3 fell squarely within R.C.M. 1001. Each family member who testified in relation to the photographs provided sworn testimony. Each witness suffered direct emotional harm as a result of the death. Furthermore, everyone that testified about their individual memories from the photographs and how they were affected is specifically authorized under law. This testimony associated with the photos is admissible as a matter in aggravation under R.C.M. 1001(b)(4) because the testimony is evidence of social and psychological impact on any victim of an offense committed by Appellant. *Id.*

Further, this testimony does not run afoul of Mil. R. Evid. 403. The probative value of testimony from these photos of social or psychological impact relating to the unlawful killing of BA, when BA is unable do so himself, is high. Moreover, the military judge carefully considered the potential Mil. R. Evid. 403 prejudice based upon the number of photographs, and agreed to put that in context, and invited counsel to argue the weight such evidence should be given. The careful balancing test done on the record would only be challenged for a clear abuse of discretion and the judge did not abuse his discretion. *See Hardison*, 64 M.J. at 281.

Finally, as to the *Edwards* issue of addressing unsworn testimony and precluding the Prosecution from preparing victim impact evidence, we do not see the connection. First, unlike *Edwards*, the testimony here was sworn, not unsworn. *See Edwards*, 82 M.J. at 241. Second, the photos associated with the

---

[4] Appellant uses the word "lore" in his brief but points to nothing suggesting that the victim's testimony was "family lore," that is, embellished memories that may contain grains of truth but are reshaped over time.

testimony were prepared by the family alone, not with the assistance of trial counsel. *See id.* at 246.

## C. Sentencing Recommendation

### 1. Additional Background

The following sworn presentencing testimony was elicited by the Prosecution from various members of the victim's family. Each portion of the quoted testimony is from a different member of BA's family.

> [Special Trial Counsel (STC)]: Is there anything else that you would like to say to the judge for him to know as he considers an appropriate sentence in this case?
>
> [BA's Mother]: I just would like, as we move forward with this sentencing, that we keep in mind that this was a great loss. He was 21 years old. He had his whole future ahead of him.
>
> _____
>
> [STC]: Is there anything else you would like to know that -- the judge to know as he is considering the right sentence to impose in this case?
>
> [BA's Eldest Sister]: [W]hat is said here today about [BA] or about [Appellant], I think should carry very little weight. I think what carries the most weight is what happened on February 11th. [Appellant] picked up a gun. He did not clear it. He pointed it at my brother. He took it off safety, and he pulled the trigger. None of that should have ever happened. [BA] was 21 years old, and he is gone. And I do not say that out of malice, and I do not say that out of hatred or revenge. I say that because those actions were deliberate, and they were choices that he made, and I think those should carry a severe consequence. And I say that because actions have consequences, and my brother deserves that justice. Thank you, Your Honor.
>
> _____
>
> [STC]: Is there anything else that you would like the judge to know in considering the appropriate sentence for this case?
>
> [BA's Older Sister]: All I have to say is my brother would have done amazing things in this world if he was here. And, you know, the – there will be justice for what happened for him, but my family and I will live in this prison for the rest of our lives. We'll never be able to escape it, and -- yeah, that's all I have.
>
> _____

[STC]: Is there anything else, sir, that you would like to tell the judge, for him to know as he determines an appropriate sentence for this crime?

[BA's Father]: [T]he pain is so intense to lose a child. And recently, we had been to a retreat with other parents who had lost [a child], and it was really nice. But just thinking it is just not the same as when it happens to you. And there just needs to be justice, of course, done, fair, but just. I guess that's it.

The Defense had the opportunity to cross-examine each witness after the Prosecution called them but elected not to question them.

**2. Law**

"Where an appellant has not preserved an objection to evidence by making a timely objection, that error will be forfeited in the absence of plain error." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (quoting *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007)). "A timely and specific objection is required so that the [trial] court is notified of a possible error, and so [that the military judge] has an opportunity to correct the error and obviate the need for appeal." *Id.* (quoting Stephen A. Saltzburg et al., FEDERAL RULES OF EVIDENCE MANUAL § 103.02(1) (10th ed. 2011)).

Under plain error review, an appellant "has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017) (internal quotation marks and citations omitted). "The plain-error doctrine 'is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Ruiz*, 54 M.J. 138, 143 (C.A.A.F. 2000) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

"When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Hays*, 62 M.J. 158, 166 (C.A.A.F. 2005) (quoting *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000)). This is because a "military judge is presumed to know the law and apply it correctly, [and] is presumed capable of filtering out inadmissible evidence . . . ." *Robbins*, 52 M.J. at 457 (citation omitted). Therefore, "plain error before a military judge sitting alone is rare indeed." *Id.* (quoting *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996)) (additional citations omitted).

**3. Analysis**

According to Appellant, the military judge plainly erred because "[e]ach of these statements was intended to convince the military judge to adjudge a

sentence at the higher end of the sentencing cap[5] and to determine that a dishonorable as opposed to bad-conduct discharge characterization was appropriate."

We view the considerate, thoughtful testimony of the family members a model of respect and decorum for both the process and Appellant. "You deserve to have a sentence" — BA's mother said referring to Appellant — "that you can live out and then feel like you paid a fair sentence for your crime." We found her statement exemplary and devoid of base anger. Each family member asked for justice, fairness, and disavowed revenge. We would be remiss if we, having been asked to examine the propriety of a military judge allowing such testimony, failed to note that we view what the family shared in their crucible of loss as a model of propriety and grace.

We see no error related to their request for justice and fairness or the mother's request for the sentence to be on the higher end for the sake of her son and for the sake of Appellant. The family members merely asked for the sentence to be fair.

Even if we took a different view of their testimony, where Appellant did not object to any of this testimony, Appellant fails under a plain error review. All three prongs of the plain error test "must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006). Here, we do not need to address whether there was error or whether any error was plain or obvious, as even if these two prongs were satisfied, Appellant has failed to establish any material prejudice to his substantial rights.

Appellant has offered no evidence that he was prejudiced in any substantial way by the testimony of the Prosecution's presentencing witnesses. While it is unclear what Appellant attempts to argue as prejudice, it seems that he is claiming that he may have been prejudiced because the military judge was advised by these witnesses as to how to view the evidence and goes beyond a request for a more severe sentence. We are unconvinced.

Appellant does not explain how the outcome might have been different if that portion of their testimony had been excluded, particularly in light of the fact that the sentencing was by a military judge sitting alone. Appellant also fails to explain how he was materially prejudiced when he received the protection and benefit of a plea agreement. In the absence of evidence of material prejudice, Appellant's plain error claim must fail.

---

[5] The plea agreement included a mandatory sentencing range of 30–48 months of confinement. There were no other requirements or limitations, including a discharge.

### III. CONCLUSION

The findings as entered are correct in law. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court